662 So.2d 131 (1995)
Ann Balzli CLAUDET
v.
Dr. Randall WEYRICH, et al.
No. 94-CA-2347.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1995.
*132 S.C. Garcia, III, Joseph F. Bishop, Jr., Metairie, for Plaintiff.
Peter E. Sperling, Greg A. Pellegrini, Frilot, Partridge, Kohnke & Clements, New Orleans, for Defendant.
Before CIACCIO, ARMSTRONG and JONES, JJ.
ARMSTRONG, Judge.
This is an appeal by one of the defendants, The Louisiana Patient's Compensation Fund ("LPCF") from a judgment for the plaintiff, Ms. Ann Claudet, in a medical malpractice action. The gist of the malpractice was a failure to diagnose breast cancer as early as should have been done. The damages result from the fact that the delay in diagnosis, and the resulting delay in treatment, substantially decreases the probability that Ms. Claudet will survive. The LPCF raises two issues on appeal as to quantum of damages but none as to liability. We find no reversible error and affirm.
Because liability is not an issue on appeal, we will not relate the facts of the malpractice in any detail. Suffice it to say that Ms. Claudet was seen by Dr. Raymond Weyrich for plastic surgery. He examined her breasts on a number of occasions over a considerable period and, while eventually detecting a lump in Ms. Claudet's breast, he did not believe it was cancer. Ms. Claudet, on a couple of occasions, expressed concern to Dr. Weyrich about the lump in her breast but he felt there was no cause for alarm. At one point, despite being advised to return in three months for a follow-up appointment, Ms. Claudet waited over a year to return to Dr. Weyrich. Finally, a biopsy was performed and it was determined that Ms. Claudet had breast cancer.
The case was tried to a jury which found liability, with 30% comparative fault, and determined damages to be $600,000 past and future general damages including pain and suffering both physical and mental ("general damages"), $180,000 future lost wages and $30,000 future cost of insurance premiums. Because of statutory limitations, applicable because this is a medical malpractice action, not all of the damages found are recoverable.
As mentioned above, the damages result from the fact that the delayed diagnosis of cancer, and the consequent delay in cancer treatment, resulted in a decreased possibility that Ms. Claudet will survive. In particular, the expert medical testimony focused upon the statistics of surviving if cancer is diagnosed and treated in Stage I as opposed to later Stage II. Ms. Claudet's cancer was diagnosed at Stage II. It was the plaintiff's theory of liability at trial, evidently accepted by the jury and not challenged on appeal, that Dr. Weyrich should have diagnosed Ms. Claudet's cancer earlier while it was still at Stage I.
There was little variation between the plaintiff's and the defendant's medical expert witnesses as to the differences in the chances for a successful cure when treating Stage I as opposed to Stage II breast cancer. If she had been treated while her cancer was in Stage I, Ms. Claudet's chances of surviving would have been about 75%. Because she was treated when her cancer was in Stage II, Ms. Claudet's chances of surviving are only 42%. It is upon this difference, 33%, that the LPCF first focuses.
The LPCF argues that the trial court erred by awarding Ms. Claudet "full recovery for the value of her life and should have reduced the recovery to 33% of the total judgment." The LPCF argues that:

*133 In assessing [general] damages at $600,000, it is clear that the jurors compensated Ms. Claudet for the complete value of her life. This figure, or the figure this [appellate] Court ultimately agrees is appropriate, should be reduced to 33%, the percent attributable to Dr. Weyrich's negligence.
Of course, Dr. Weyrich is not responsible for Ms. Claudet's having cancer. Instead, he is responsible only for the reduction in her chances of surviving. Even if there had been no malpractice, Ms. Claudet still would have cancer and there still would be a 25% possibility that she would not survive.
However, the LPCF's argument must fail because it certainly is not "clear" that the jury determined the general damages based upon "the complete value of her [Ms. Claudet's] life." To the contrary, the entire record points to the conclusion that the jury determined the general damages based upon the 33% decrease in Ms. Claudet's chances of surviving.
On the jury verdict form, question 6 asked; "Please state the dollar amount of damages which would fairly and adequately compensate Ann Claudet for injuries, loss of chance of survival, that she would not have suffered but for malpractice [.]." Blanks then were provided to fill in dollar figures for general damages and other damages.
In its jury instructions as to damages, the trial court couched an instruction in terms of decreased chance of survival. The plaintiff's counsel made his closing argument to the jury, both as to liability and damages, in terms of percentage decrease in Ms. Claudet's chance of survival. The defense counsel also couched his closing argument to the jury in terms of percentage decrease in chance of survival. The plaintiff's medical expert witness testified in terms of a percentage decrease in chance of survival. The defense medical expert witness couched his testimony in the same terms.
As far as the record discloses, the case was tried, and the jury made its determination of general damages, using exactly the methodology argued for on appeal by the LPCF. That is, the case was tried, and the damages were determined by the jury, in terms of Ms. Claudet's decreased chances of survival rather than in terms of the full value of her life. Thus, as to this point, LPCF has nothing of which to complain.
In its second argument on appeal, the LPCF asserts that the $600,000 general damages award is excessive. (The LPCF's brief refers to the other components of the damages awarded, but its analysis of whether the damages awarded are excessive addresses only the general damages award.) The LPCF points to evidence that, as Ms. Claudet has now survived for four years with no recurrence of cancer, her chances of survival have, statistically speaking, improved considerably. That is because many of those who die from recurrence of breast cancer do so within three to four years. However, the general damages award was for past (as well as future) suffering. The fact that Ms. Claudet's present chances of survival are improved, while affecting her future suffering, does not reduce her past suffering.
The LPCF also points to evidence that, regardless of whether Ms. Claudet's cancer was diagnosed at Stage I or Stage II, she would have received the same treatment. However, the general damages award was for past mental (as well as physical) suffering. While the fact that the treatment would have been the same is significant to the award of damages for past physical suffering, it cannot be ignored that Ms. Claudet's past mental suffering was increased by her reduced chance of survival. Also, of course, the increased risk of recurrence of cancer does increase the likelihood of future physical suffering which, if it occurs, the record suggests, will be much worse than the past physical suffering.
Both of the LPCF's justdiscussed points were presented to the jury at trial. The first point, as to Ms. Claudet's having survived several years without recurrence of cancer, was given particular attention in the defense closing argument to the jury. We must assume that LPCF's two points were considered by the jury in determining the amount of general damages.
This brings us to the key legal point, which is that the determination of the *134 amount of general damages primarily is done by the finder of fact. In this case, that is the jury. In particular, there is only limited appellate review of such determinations.
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc. 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993).
When viewed in light of the Youn and Theriot standards of appellate review, the jury's determination of general damages in this case is not reversible error. The record justifies a substantial award for general damages and provides no basis to conclude that the jury abused its discretion.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.