688 So.2d 692 (1997)
Larry W. GREER, et al., Plaintiffs-Appellants,
v.
LAMMICO, et al., Defendants-Appellees.
No. 29066-CA.
Court of Appeal of Louisiana, Second Circuit.
January 31, 1997.
Rehearing Denied February 20, 1997.
*693 Sherburne Sentell, Minden, for Plaintiffs-Appellants.
Blanchard, Walker, O'Quin & Roberts by Paul Adkins, Shreveport, for Defendants-Appellees.
Before MARVIN, NORRIS and STEWART, JJ.
STEWART, Judge.
Plaintiffs, the Greers, appeal a civil jury verdict finding that Dr. Robert Barrett's act of malpractice was not a substantial factor which reduced Gretchen Greer's chance of survival and, consequently, awarding no damages for that lost chance of survival. For the following reasons, we reverse and render.

PROCEDURAL HISTORY
Gretchen Greer, who suffered breast cancer, filed a claim against Dr. Barrett requesting the Patients' Compensation Fund ("PCF") to form a medical review panel. Dr. Barrett settled without the matter proceeding to the medical review panel for a decision. His insurer paid the policy limits of $100,000.00 and obtained a full release. Mrs. Greer reserved all rights against PCF for damages exceeding $100,000.00.
Mrs. Greer then filed a petition seeking judicial approval of the settlement with Dr. Barrett, who admitted malpractice, and asking the court to set a hearing to determine the amount of damages, if any, to be paid Mrs. Greer by the PCF. Before a jury trial on the issue of excess damages could be held, Mrs. Greer died. Her husband and children were substituted as plaintiffs, and the petition was amended to add claims for wrongful death, mental anguish, pain and suffering, loss of quality of life, lost chance of survival, and other additional damages. The jury determined that more probably than not Dr. Barrett's malpractice was not a substantial factor which reduced Mrs. Greer's chance of survival and awarded no damages. Following trial, the judge denied the Greer's motion for judgment notwithstanding the verdict. The Greers appeal and assign nine errors.

FACTS
Mrs. Greer noticed a mass in her left breast and consulted Dr. Barrett for treatment. After an examination and biopsy, the tumor was diagnosed as malignant. On July 23, 1990, Dr. Barrett performed a modified mastectomy of the left breast and determined that all the cancerous tissue had been removed. Extensive tests indicated that the cancer had not spread. Dr. Barrett then informed Mrs. Greer that the cancer was localized and that she had a 75% chance of the cancer not recurring. Mrs. Greer continued to see Dr. Barrett post-operatively. Other than examining Mrs. Greer's right breast for a palpable mass, Dr. Barrett never performed a mammogram on Mrs. Greer's right breast despite Mrs. Greer's repeated requests for a mammogram.
On December 26, 1990, Mrs. Greer, during a consultation with Dr. Christopher McDonald, on referral from Dr. Barrett, mentioned that a mammogram of her right breast had not been performed. The mammogram that was immediately scheduled and performed on December 26, 1990, revealed a tumor in Mrs. Greer's right breast. When the biopsy indicated that the tumor was malignant, Mrs. Greer underwent a right modified mastectomy on January 2, 1991. At that time, Mrs. Greer was informed by Dr. Barrett that her chance of survival was less than 50% and that she would need both chemotherapy and radiation treatment.
When the tumor in her left breast was discovered, extensive testing was performed to determine whether the cancer had metastasized. All tests were negative and showed that the cancer had not spread to her lymphatic system. However, following the second surgery, tests revealed that cancer had spread to Mrs. Greer's lymph nodes which reduced her chance of surviving the cancer.
Subsequent to the mastectomy of her left breast, Mrs. Greer had approximately six treatments of chemotherapy administered by Dr. McDonald. After discovery of cancer in her right breast, Mrs. Greer was treated *694 more aggressively with chemotherapy, radiation therapy, and hormone therapy, which made her very ill and caused great suffering. Within a short period of time, doctors acknowledged that the cancer was incurable. Mrs. Greer died on January 22, 1995.

DISCUSSION
Assignment of Error # 1: The trial court erred in failing to find that the settlement agreement established the Fund's liability by allowing the Fund to relitigate the issues of causation and original harm.
Assignment of Error # 2: The trial court erred in failing to apply the test established by Graham v. Willis-Knighton, later adopted and refined by the Louisiana Supreme Court in Pendleton v. Barrett, which would have required the judge to instruct the jury that certain original harm was admitted and to delineate that harm.
Assignment of Error # 5: The trial court erred by instructing the jury that, although "some damage" was admitted, plaintiffs/appellants had to prove the extent and amount of damage.
Assignment of Error # 6: The trial court erred by instructing the jury that plaintiffs/appellants must prove the harm caused by the malpractice.
The Greers assert by these assignments of that the trial court erred as a matter of law by improperly applying the procedure established by Graham, infra, and Pendleton, infra, to determine the extent of the admitted original harm and improperly delineated for the jury what harm was admitted and, further, that the trial court erred in allowing PCF to relitigate the issue of causation and erred by instructing the jury that the Greers had to prove the harm caused by the malpractice and the extent of damage.
The Medical Malpractice Act regulates the liability of PCF once a claimant and health care provider have reached a settlement. La.R.S. 40:1299.44 C(5) provides, in pertinent part:
In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
In Graham v. Willis-Knighton Medical Center, 27,338 (La.App. 2 Cir. 9/29/95), 662 So.2d 161, this court interpreted La.R.S. 40:1299.44 C(5) and found that liability for malpractice is admitted once a health care provider settles for $100,000 and that the only issue to be resolved between the claimant and PCF is the amount of excess damages. Following the rationale reasserted by the Louisiana Supreme Court in Jones v. St. Francis Cabrini Hospital, 94-2217 (La. 4/10/95), 652 So.2d 1331, this court held that a "settlement under the Act is an admission and establishment of liability" for the original harm caused by the act of malpractice which "the Fund is not permitted to refute or challenge at trial." Graham, supra.
Graham, supra, was cited by the Louisiana Supreme Court in Pendleton v. Barrett, 95-2066 (La. 5/31/96), 675 So.2d 720, in which the court determined whether La.R.S. 40:1299.44 C(5) requires a district court to determine medical causation in assessing the amount of damages to be paid from PCF. The court concluded that the liability of the health care provider was admitted and established as to the original harm emanating from the alleged malpractice and that no further proof of causation was required to establish liability for the original harm. The court determined that, if the parties did not agree on the amount of excess damages to be paid by PCF, the district court's sole function was to calculate and assess damages. Once a settlement is approved, the duty of the district judge is to determine the original or apparent harm which the admission of liability encompasses by a close review of the record consisting of the pleadings, discovery and any trial proceedings. See also Bijou v. Alton Ochsner Medical Foundation, 95-3074 (La. 9/5/96), 679 So.2d 893.
The petition for medical review panel alleged that Mrs. Greer's "chances for survival have been significantly reduced as a result of *695 the medical negligence of defendant (Dr. Barrett) in failing to institute appropriate diagnostic procedures in a timely fashion" to determine whether Mrs. Greer had cancer in her right breast also. Further, the petition alleged that Dr. Barrett's act of malpractice "materially reduced plaintiff's (Mrs. Greer's) chances of recovering from the cancer and has likewise materially worsened the chances that the adjunctive therapy[1] will be effective and has likewise resulted in the necessity for substantially more aggressive adjunctive therapy."
Dr. Barrett settled for his policy limit of $100,000.00 prior to the formation of a medical review panel. At that time, Mrs. Greer filed a petition in district court to approve the settlement. That petition alleged that Mrs. Greer was entitled to an award of $500,000.00 plus all past and future medical expenses and legal interest on all amounts from the date of the original filing of the claim. The supplemental and amended petition filed after Mrs. Greer's death alleged her death and the extent of the harm caused by the act of malpractice prior to her death, including a "lost chance of survival" and "shortened life expectancy."
Upon trial of this matter, the trial judge allowed PCF to relitigate the issue of causation. PCF alleged and presented evidence and expert testimony to show that Mrs. Greer's chance of survival upon discovery of cancer in her left breast was zero because the cancer in the left breast caused her death and that Dr. Barrett's failure to perform a mammogram on the right breast did not cause Mrs. Greer any harm by lessening her chance of survival.
Further, the trial judge instructed the jury that, although Dr. Barrett had admitted malpractice, plaintiff had to prove causation and the amount of damages, that plaintiff "must show that as a result of defendant's actions, she suffered harm that would not have otherwise occurred", and that plaintiff bears the burden of showing that "the fault did, in fact, aggravate her pre-existing conditions."
Upon finding that the trial court made a reversible error of law, the court of appeal must redetermine the facts de novo from the entire record and render a judgment on the merits. Ferrell v. Fireman's Fund Insurance Co., 94-1252 (La. 2/20/95), 650 So.2d 742; Holt v. Aetna Casualty & Surety Co., 28,450 (La.App. 2 Cir. 9/3/96), 680 So.2d 117.
Considering the decision of the Louisiana Supreme Court in Pendleton, supra, and of this court in Graham, supra, we find that the trial court committed reversible error of law in failing to comply with La.R.S. 40:1299.44 C(5) as interpreted in Pendleton, supra, and Graham, supra, by allowing PCF to relitigate causation, by failing to properly instruct the jury as to the original harm that was admitted by the malpractice, and by improperly instructing the jury that plaintiff must prove causation and the extent of the damage. Therefore, the judgment of the trial court is reversed.
Based on a close review of the record which in this case includes the petition for medical review panel, the petition to approve settlement, and the record and transcript of the trial proceedings, we find that the scope of the harm, caused by Dr. Barrett's act of malpractice and admitted by his settlement with Mrs. Greer, was a loss of chance of survival and a shortened life expectancy, in addition to the anxiety and pain she suffered therefrom.
Once an appellate court determines that the trial court erred, La.C.C.P. art. 2164 authorizes the appellate courts to render any judgment which is just, legal, and proper. Where a record contains sufficient proof of damages, a court of appeal may award damages even when the trial court has rejected plaintiff's claims. Gordon v. Willis Knighton Medical Center, 27,044 (La.App. 2 Cir. 6/21/95), 661 So.2d 991. In making this initial award of damages, the court of appeal is not limited to the highest or lowest which would be affirmed, but the court may award an amount which is just compensation based on the record. Gordon v. Willis Knighton Medical Center, supra; Beckham v. St. Paul Fire & Marine Insurance, 614 So.2d 760 (La.App. 2 Cir.1993).
*696 In determining the amount of damages to be awarded for loss of chance of survival, we are guided by the decision of the Louisiana Supreme Court in Smith v. State, Department of Health and Hospitals, 95-0038 (La. 6/25/96), 676 So.2d 543. The court discussed three possible methods of valuation of the loss of a chance of survival in medical malpractice cases and adopted a method whereby the fact finder focuses on the chance of survival lost due to the malpractice as "a distinct compensable injury and to value the lost chance as a lump sum award based on all the evidence in the record, as is done for any other item of general damages." Smith v. State, Department of Health and Hospitals, supra at 547. The court reasoned that this method is more appropriate because it allows "the jury to consider all the evidence, including expert medical testimony regarding the percentage chances of survival" and because it is more logical "to value directly the lost chance" than calculating damages for wrongful death when the health care provider's act of malpractice was not the more probable cause of death. Smith v. State, Department of Health and Hospitals, supra at 548. The court concluded that the fact finder would be allowed to consider such factors as evidence of percentages of chance of survival, loss of support, loss of love and affection, and other relevant evidence. Smith v. State, Department of Health and Hospitals, supra.
The testimony of Dr. Barrett established that he informed Mrs. Greer that she had a 75% chance of survival following her first mastectomy. After Mrs. Greer's second mastectomy, Dr. Barrett testified that, he tried "to have a positive attitude with my patients" and informed her that her chance of survival had been reduced to less than 50%. However, Dr. Barrett was not specific as to how much less than 50%. The experts called to testify by PCF generally agreed that Mrs. Greer had a 75% chance of survival following discovery of cancer in the left breast. However, none of the PCF experts testified regarding her chance of survival after the cancer in the right breast was diagnosed.
The Greers cite Turner v. Massiah, 94-2548 (La. 6/16/95), 656 So.2d 636, and argue in brief that the Louisiana Supreme Court has observed that oncology experts generally accept that, if diagnosed with Stage I cancer, where breast cancer is localized in a breast and a mastectomy is timely performed, the patient has a 75-80% chance of survival but that, if diagnosed with Stage II cancer, where the cancer has metastasized and spread to the lymphatic system, the patient's chance of survival is then only 25%. We do not read Turner v. Massiah, supra, to stand for that proposition.
In Turner v. Massiah, supra, the misdiagnosis by two doctors resulted in a reduction of Mrs. Turner's chance of survival from 80-90% to 25%. Although on appeal the amount of damages awarded Mrs. Turner was not at issue and the court reduced the award for other reasons, Mrs. Turner was still compensated $500,000.00 for her lost chance of survival.[2] In Claudet v. Weyrich, 94-2347 (La. App. 4 Cir. 9/28/95), 662 So.2d 131, the court of appeal found that the jury based a general damage award in the amount of $600,000.00 on Mrs. Claudet's 33% lost chance of survival and affirmed that award.
We find that Mrs. Greer's chance of survival was reduced by at least one-third and that this knowledge caused her to suffer mental anguish in addition to her physical pain and suffering due to adjunctive therapy. Considering the record, including pleadings and trial testimony, we find that an award in the amount of $400,000.00 would adequately and appropriately compensate the Greers for Mrs. Greer's lost chance of survival.
Due to our findings regarding assignments of error # 1, # 2, # 5, and # 6, the remaining assignments of error are without merit, and we will pretermit discussion of those assignments.

CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court and render an *697 award to plaintiffs/appellants in the amount of $400,000.00, plus legal interest from the date of judicial demand, with $100,000.00 credit for the amount of the settlement with Dr. Barrett. Costs of this appeal are assessed to PCF.
REVERSED and RENDERED.
NOTES
[1] Adjunctive therapy includes chemotherapy, radiation therapy, and hormone therapy.
[2] One doctor settled with Mrs. Turner for $100,000.00. The court then determined that the total amount recoverable from both doctors and the PCF was $500,000.00 and reduced the amount awarded by the jury accordingly.