712 So.2d 598 (1998)
Larry W. GREER, et al., Plaintiffs-Appellants,
v.
LAMMICO, et al., Defendants-Appellees.
No. 29066-CA.
Court of Appeal of Louisiana, Second Circuit.
April 13, 1998.
*599 Sherburne Sentell, Minden, for Plaintiffs-Appellants.
Blanchard, Walker, O'Quin & Roberts by Paul Adkins, Shreveport, for Defendants-Appellees.
Before MARVIN, C.J., NORRIS, BROWN, STEWART and PEATROSS, JJ.
STEWART, Judge.
The Greers, plaintiffs, appeal a civil jury verdict finding that Dr. Robert Barrett's act of malpractice was not a substantial factor which reduced Gretchen Greer's chance of survival and, consequently, awarding no damages for that lost chance of survival. The Louisiana Supreme Court in Greer v. LAMMICO, 97-0731 (La.11/7/97), 703 So.2d 30, vacated our judgment in Greer v. LAMMICO, 29,066 (La.App. 2nd Cir. 1/31/97), 688 So.2d 692, and remanded this matter to this court for reconsideration in light of Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365. For the following reasons, we reverse the judgment of the trial court and remand this matter for new trial.

PROCEDURAL HISTORY
Gretchen Greer, who suffered breast cancer, filed a claim against Dr. Barrett requesting the Patients' Compensation Fund ("PCF") to form a medical review panel. The petition for medical review panel alleged that Mrs. Greer's "chances for survival have been significantly reduced as a result of the medical negligence of defendant (Dr. Barrett) in failing to institute appropriate diagnostic procedures in a timely fashion" to determine whether Mrs. Greer had cancer in her right breast also. Further, the petition alleged that Dr. Barrett's act of malpractice "materially reduced plaintiff's (Mrs. Greer's) chances of recovering from the cancer and has likewise materially worsened the chances that the adjunctive therapy[1] will be effective and has likewise resulted in the necessity for substantially more aggressive adjunctive therapy." Dr. Barrett settled without the matter proceeding to the medical review panel for a decision. His insurer paid the policy limits of $100,000.00 and obtained a full release. Mrs. Greer reserved all rights against PCF for damages exceeding $100,000.00.
Mrs. Greer then filed a petition seeking judicial approval of the settlement with Dr. Barrett, who admitted malpractice, and asking the court to set a hearing to determine the amount of damages, if any, to be paid Mrs. Greer by the PCF That petition alleged that Mrs. Greer was entitled to an award of $500,000.00 plus all past and future medical expenses and legal interest on all amounts from the date of the original filing of the claim.
Before a jury trial on the issue of excess damages could be held, Mrs. Greer died. Her husband and children were substituted as plaintiffs, and the petition was amended to add claims for wrongful death, mental anguish, pain and suffering, loss of quality of life, lost chance of survival, and other additional damages. The supplemental and amended petition filed after Mrs. Greer's death alleged her death and the extent of the harm caused by the act of malpractice prior to her death, including a "lost chance of survival" and "shortened life expectancy."
The jury rendered a verdict finding that Dr. Barrett's malpractice was not a substantial factor which reduced Mrs. Greer's chance of survival and awarding no damages. The judge denied the Greer's motions for judgment notwithstanding the verdict and new trial. The Greers appealed and assigned nine errors.
On January 31, 1997, this court rendered a decision on appeal, based on La. R.S. 40:1299.44 C(5) as interpreted in Pendleton v. Barrett, 95-2066 (La.5/31/96), 675 So.2d 720, *600 and Graham v. Willis-Knighton Medical Center, 27,338 (La.App. 2nd Cir. 9/29/95), 662 So.2d 161. In Greer v. LAMMICO, 29-066 (La.App. 2nd Cir. 1/31/97), 688 So.2d 692, we reversed the judgment of the trial court and rendered judgment awarding plaintiffs/appellants damages in the amount of $400,000.00, plus legal interest from the date of judicial demand, with $100,000.00 credit for the amount of the settlement with Dr. Barrett. Subsequently, the Louisiana Supreme Court reversed the judgment of this court in Graham, abandoned the Pendleton pre-trial procedure, and attempted to clarify the effect of La. R.S. 40:1299.44 C(5) by defining the term "liability" as used in that provision. See Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365. This matter has now been remanded to this court for reconsideration in light of the Louisiana Supreme Court's decision in Graham.

FACTS
Mrs. Greer noticed a mass in her left breast and consulted Dr. Barrett for treatment. After an examination and biopsy, the tumor was diagnosed as malignant. On July 23, 1990, Dr. Barrett performed a modified mastectomy of the left breast and determined that all the cancerous tissue had been removed. Extensive tests indicated that the cancer had not spread. Dr. Barrett then informed Mrs. Greer that the cancer was localized and that she had a 75% chance of the cancer not recurring. Mrs. Greer continued to see Dr. Barrett post-operatively. Other than examining Mrs. Greer's right breast for a palpable mass, Dr. Barrett never performed a mammogram on Mrs. Greer's right breast despite Mrs.Greer's repeated requests for a mammogram.
On December 26, 1990, Mrs. Greer, during a consultation with Dr. Christopher McDonald, on referral from Dr. Barrett, mentioned that a mammogram of her right breast had not been performed. The mammogram that was immediately scheduled and performed on December 26, 1990, revealed a tumor in Mrs. Greer's right breast. When the biopsy indicated that the tumor was malignant, Mrs. Greer underwent a right modified mastectomy on January 2, 1991. At that time, Mrs. Greer was informed by Dr. Barrett that her chance of survival was less than 50% and that she would need both chemotherapy and radiation treatment.
When the tumor in her left breast was discovered, extensive testing was performed to determine whether the cancer had metastasized. All tests were negative and showed that the cancer had not spread to her lymphatic system. However, following the second surgery, tests revealed that cancer had spread to Mrs. Greer's lymph nodes which reduced her chance of surviving the cancer.
Subsequent to the mastectomy of her left breast, Mrs. Greer had approximately six treatments of chemotherapy administered by Dr. McDonald. After discovery of cancer in her right breast, Mrs. Greer was treated more aggressively with chemotherapy, radiation therapy, and hormone therapy, which made her very ill and caused great suffering. Within a short period of time, doctors acknowledged that the cancer was incurable. Mrs. Greer died on January 22, 1995.

DISCUSSION
Assignment of Error # 1: The trial court erred in failing to find that the settlement agreement established the Fund's liability by allowing the Fund to relitigate the issues of causation and original harm.
Assignment of Error # 5: The trial court erred by instructing the jury that, although "some damage" was admitted, plaintiffs/appellants had to prove the extent and amount of damage.
Assignment of Error # 6: The trial court erred by instructing the jury that plaintiffs/appellants must prove the harm caused by the malpractice.
In these assignments of error, the Greers have asserted that the trial court erred as a matter of law by improperly applying La. R.S. 40:1299.44 C(5) and allowing PCF to relitigate the issue of causation and erred by instructing the jury that the Greers had to prove the harm caused by the malpractice and the extent of damage. The primary issue raised by these assignments of error is whether the jury verdict was tainted by jury *601 instructions, regarding the burden of proof as provided by La. R.S. 40:1299.44 C(5), which were so erroneous as to be prejudicial.
Generally, the factual findings of a jury are accorded great weight and will not be disturbed on appeal absent manifest error. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). However, when a verdict is based upon jury instructions "that are faulty in a critical regard, the verdict is tainted and not entitled to a presumption of regularity." Wilson v. National Union Fire Ins. Co. of Louisiana, 27,702 at p. 6 (La.App. 2nd Cir. 12/6/95), 665 So. 1252, 1259. See also Holt v. Aetna Cas. & Sur. Co., 28,450 (La.App. 2nd Cir. 9/3/96), 680 So.2d 117; Fuller v. United States Aircraft Ins. Group, 530 So.2d 1282 (La.App. 2nd Cir.1988), writ denied 534 So.2d 444 (La.1988), cert. denied 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989). Not every deficient jury instruction mandates a de novo review. Wilson v. National Union Fire Ins. Co. of Louisiana, supra. An appellate court exercises great restraint before overturning a jury verdict on a suggestion that the jury instructions were so erroneous as to be prejudicial. Holt v. Aetna Cas. & Sur. Co., supra; Wilson v. National Union Fire Ins. of Louisiana, supra. The standard of review to determine whether an erroneous jury instruction tainted the verdict involves comparing the degree of error with the jury instructions as a whole and the circumstances of the case. Holt v. Aetna Cas. & Sur. Co., supra; Wilson v. National Union Fire Ins. Co., supra. Therefore, the pertinent inquiry is whether the erroneous instruction misled the jury to such an extent that the jury was prevented from doing justice. Holt v. Aetna Cas. & Sur. Co., supra; Wilson v. National Union Fire Ins. Co., supra; Kessler v. Southmark Corp., 25,941 (La.App. 2nd Cir. 9/21/94), 643 So.2d 345.
A trial judge has a duty to charge the jury as to the law which applies in a case. Moore v. Safeway, Inc., 95-1552 (La.App. 1st Cir. 11/22/96), 700 So.2d 831. Adequate jury instructions are those that fairly and reasonably identify the issues and properly reflect applicable law. Wilson v. National Union Fire Ins. Co., supra; Fuller v. United States Aircraft Ins. Co., supra.
This matter was tried by a jury in Caddo Parish during the week of August 14, 1995, prior to decisions in either Pendleton or Graham which interpreted La. R.S. 40:1299.44 C(5). The trial judge instructed the jury, in pertinent part:
The burden is upon the plaintiff to prove his case and every essential element thereof including any amount due him to your reasonable satisfaction by a preponderance of the evidence ... Thus, the plaintiff in this type of action must prove, excuse me, must produce evidence from which the jury can reasonably conclude that plaintiff's harm and resulting damages if any, was more probably than not caused by the negligence of the particular defendant ... Fault means negligence which is defined as the failure to exercise reasonable care to a person to whom a duty to exercise reasonable care is owed. The elements of a cause of action are fault, causation and damages. Therefore in this case the plaintiff ordinarily must prove, number one, the defendant was at fault. But in this case defendant, Dr. Robert Barrett has admitted malpractice, which means fault and which means liability for damage occasioned thereby and that some harm resulted. Plaintiff must prove, number two, causation and number three, the amount of damage ... The fact that I instruct you in the law on damages as well as other matters is not to imply or suggest that the Court intends to express any opinion as to whether or not they should be allowed....
In determining whether these jury instructions correctly reflected applicable law, we must first examine La. R.S. 40:1299.44 C(5) as interpreted by jurisprudence, particularly the Louisiana Supreme Court's recent decision in Graham. The Medical Malpractice Act regulates the liability of PCF once a claimant and health care provider have reached a settlement. La. R.S. 40: 1299.44 C(5) provides, in pertinent part:
In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health *602 care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
In Graham v. Willis-Knighton Medical Center, 27,338 (La.App. 2nd Cir. 9/29/95), 662 So.2d 161, this court interpreted La. R.S. 40:1299.44 C(5) and found that liability for malpractice is admitted once a health care provider settles for $100,000 and that the only issue to be resolved between the claimant and PCF is the amount of excess damages. Following the rationale reasserted by the Louisiana Supreme Court in Jones v. St. Francis Cabrini Hospital, 94-2217 (La.4/10/95), 652 So.2d 1331, this court held that a "settlement under the Act is an admission and establishment of liability" for the original harm caused by the act of malpractice which "the Fund is not permitted to refute or challenge at trial." Graham, 27,338 at p. 5, 662 So.2d at 164.
In Pendleton v. Barrett, 95-2066 (La.5/31/96), 675 So.2d 720, the Louisiana Supreme Court determined whether La. R.S. 40:1299.44 C(5) requires a district court to determine medical causation in assessing the amount of damages to be paid from PCF. The court concluded that the liability of the health care provider was admitted and established as to the original harm emanating from the alleged malpractice and that no further proof of causation was required to establish liability for the original harm. The court determined that, if the parties did not agree on the amount of excess damages to be paid by PCF, the district court's sole function was to calculate and assess damages. Once a settlement has been approved, the duty of the district judge is to determine the original or apparent harm which the admission of liability encompasses by a close review of the record consisting of the pleadings, discovery and any trial proceedings.
Now, in Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365, the Louisiana Supreme Court has chosen "not to adhere to the Pendleton pre-trial procedure" in concluding, as follows:
... the legislative intent of "liability" in Section 1299.44C(5) was that the payment of $100,000 in settlement establishes proof of liability for the malpractice and for damages of at least $100,000 resulting from the malpractice, which is a very significant benefit to the medical malpractice victim. However, at trial against the Fund, the plaintiff has the burden of proving that the admitted malpractice caused damages in excess of $100,000.
97-0188 at p. 9, 699 So.2d at 372.
Apparently, the court has chosen to follow the rationale of the dissenters in the four-to-three Pendleton decision. In assigned reasons, Justices Marcus and Lemmon interpreted the term "liability" in La. R.S. 40:1299.44 C(5) to mean "fault and damages of $100,000." Pendleton v. Barrett, 95-2066 at p. 1, 675 So.2d at 732. Thus, a settlement payment of $100,000 "constitutes an admission (1) of malpractice by the provider and (2) of causation by the malpractice of damages of at least $100,000." Pendleton v. Barrett, Id. Under this interpretation, the medical malpractice victim is relieved of proving (1) the standard of care and (2) a breach by the health care provider. However, the plaintiff, "just as the victim in any other tort action in which "liability" is admitted, has the burden of proving that the tortfeasor's admitted breach of the standard of care caused damages in excess of the amount paid in settlement." Graham v. Willis-Knighton Medical Center, 97-0188 at p. 6, 699 So.2d at 369.
Following the Graham rationale, the Greers, plaintiffs in the instant case, must prove that Dr. Barrett's admitted breach of the standard of care caused damages in excess of $100,000, the amount paid in settlement. Our question now is whether the jury instructions properly and adequately reflected applicable law regarding plaintiff's burden of proof at trial.
At trial of this matter, the trial judge allowed PCF to relitigate the issue of causation. PCF presented evidence and expert testimony to show that Mrs. Greer's chance of survival upon discovery of cancer in her left breast was zero because the cancer in the left breast caused her death and that Dr. Barrett's failure to perform a mammogram *603 on the right breast did not cause Mrs. Greer any harm by lessening her chance of survival. The PCF attempted to prove and, in fact, argued that Dr. Barrett's admitted malpractice caused no damage to Mrs. Greer.
Further, the trial court instructed the jury that, although Dr. Barrett had admitted malpractice, plaintiff had to prove causation and the amount of damages, that plaintiff "must show that as a result of defendant's actions, she suffered harm that would not have otherwise occurred", and that plaintiff bears the burden of showing that "the fault did, in fact, aggravate her pre-existing conditions." These jury instructions indicated that the Greers were required to show that Dr. Barrett's admitted malpractice caused any damage and implied that Dr. Barrett's admitted malpractice may have, in fact, caused no damage to Mrs. Greer.
At trial of this matter, neither the trial court nor counsel had the benefit of the Louisiana Supreme Court's decision in Graham. The Greers interpreted La. R.S. 40:1299.44 C(5) to mean that two elements of their claim, fault and causation, were established by Dr. Barrett's settlement. Conversely, PCF interpreted La. R.S. 40:1299.44 C(5) as requiring plaintiffs to prove both causation and damages. Consequently, the Greers presented evidence only on the amount of damages resulting from the admitted malpractice, and defendant was allowed to present evidence that no harm or damage was caused by the admitted malpractice.
In light of the Louisiana Supreme Court decision in Graham, we find that the trial court failed to properly instruct the jury as to the burden of proof in compliance with La. R.S. 40:1299.44 C(5) and that the jury verdict was contaminated by the erroneous instructions. Therefore, the judgment of the trial court is reversed, and the verdict is set aside.
Where a jury verdict is "tainted" due to a material error at trial but an otherwise complete trial record exists, the general rule is that the appellate should, if it can, render judgment on the record. Ferrell v. Fireman's Fund Insurance Co., 94-1252 (La.2/20/95), 650 So.2d 742; Holt v. Aetna Cas. & Sur. Co., supra. However, the appellate court must decide whether the record is such that the court can find a preponderance of the evidence from the cold record. See Pendleton v. Barrett, supra.
Our decision and the Louisiana Supreme Court's decision in Graham has establish new parameters for application of La. R.S. 40:1299.44 C(5) regarding "liability" and the consequent burden of proof on plaintiff. A careful review of the record reflects that both plaintiffs and defendants were denied an opportunity to fully and fairly present their case to the jury due to their collective misunderstanding of La. R.S. 40:1299.44 C(5) and that the trial court's instructions did not clearly and accurately state applicable law as provided by La. R.S. 40:1299.44 C(5). In the interest of justice and equity, we remand this matter for new trial in accordance with this decision.

CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court and remand this matter for new trial. Costs of this appeal are assessed equally to both appellants and appellees.
REVERSED and REMANDED.
NOTES
[1] Adjunctive therapy includes chemotherapy, radiation therapy, and hormone therapy.