755 So.2d 972 (1999)
Kirk McPHERSON, et al.
v.
LAKE AREA MEDICAL CENTER, et al.
No. 99-977.
Court of Appeal of Louisiana, Third Circuit.
December 29, 1999.
Paul Jerome Guilliot, Lafayette, B. Todd Soileau, Baton Rouge, for Kirk and Dianna McPherson, etc.
Michael Keith Prudhomme, Michele S. Caballero, Lake Charles, for La. Patients' Compensation Fund.
Donlon Pugh, Lafayette, for Ronald M. Lewis, M.D.
Before COOKS, PETERS, and PICKETT, Judges.
*973 PETERS, J.
In this medical malpractice action, the Louisiana Patient's Compensation Fund (PCF) appeals a partial summary judgment that awarded the plaintiffs $207,842.00 for loss of earning capacity. For the following reasons, we reverse the trial court's judgment and remand the matter for further proceedings.

DISCUSSION OF THE RECORD
On February 7, 1995, Kirk McPherson underwent a lumbar laminectomy with discectomy at the Lake Area Medical Center in Lake Charles, Louisiana.[1] During the surgery, Mr. McPherson sustained a left retinal arterial occlusion resulting in the permanent loss of vision in his left eye. Thereafter, Mr. McPherson and his wife, Dianna, filed this medical malpractice action individually and on behalf of their two minor children to recover damages suffered as a result of Mr. McPherson's loss of vision. The McPhersons named several defendants[2] in their original petition, including Dr. Ronald M. Lewis, the anesthesiologist for the surgery, and Galen-Med, Inc. The McPhersons alleged that upon awakening from the anesthesia, Mr. McPherson noticed problems with pain and loss of vision in his left eye. They alleged, among other things, negligence in the failure to properly pack and cover Mr. McPherson's eyes during the surgery, to appropriately monitor him while he was under anesthesia, to adequately adjust him during the surgery, and to render proper assistance and care in the postoperative room.
During the pending litigation, the McPhersons and Dr. Lewis entered into a compromise settlement pursuant to La. R.S. 40:1299.44 wherein Dr. Lewis admitted liability and paid the McPhersons $100,000.00. Pursuant to that statute, the trial court approved the settlement and dismissed the McPhersons' claims against Dr. Lewis and Galen-Med, Inc. The PCF was added as a defendant for excess damages.
Thereafter, the McPhersons filed a motion for summary judgment asserting that they were entitled to a partial summary judgment setting Mr. McPherson's loss of earning capacity. In support of the motion, the McPhersons attached as exhibits to their motion past and future loss of earning capacity calculations and the deposition of Allen Simmons, a vocational rehabilitation expert retained by the PCF. The McPhersons asserted that Mr. Simmons testified in his deposition that as a result of his blindness, Mr. McPherson sustained a loss of earning capacity of at least $5.15 per hour and that "[f]or purposes of this motion, plaintiffs will stipulate that the PCF's expert is correct in this assessment." Additionally, the McPhersons alleged that given Mr. McPherson's age, the growth-rate factor, and the present-value factor, Mr. McPherson had an uncontested loss of earning capacity of at least $222,634.00. At the hearing on the motion, the McPhersons' attorney asserted that without the growth-rate and present-value factors, the loss of earning capacity would be $207,842.00.[3] The trial court granted the motion for summary judgment, awarding $207,842.00 for loss of earning capacity. Additionally, the court certified that the judgment was a final judgment pursuant to La.Code Civ.P. art. 1915. It is from this judgment that the PCF appeals.[4]

*974 OPINION
The PCF contends that the trial court erred in granting the partial summary judgment because the motion for summary judgment was an improper procedural vehicle in this instance. Specifically, the PCF asserts that because the McPhersons sought to establish the amount of only one element of damages, in effect the summary judgment is a "`partial' partial summary judgment."
The PCF has not cited us to any authority for the proposition that the summary judgment on the issue of loss of earning capacity is an improper "`partial' partial summary judgment." Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). La.Code Civ.P. art. 966(A) provides in part:
(1) The plaintiff ... in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed....
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969.[[5]] The procedure is favored and shall be construed to accomplish these ends.
(Emphasis added.)
Further, La.Code Civ.P. art. 966(E) provides that "[a] summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary Judgment does not dispose of the entire case."[6] The McPhersons sought relief for loss of earning capacity, and they were authorized by La.Code Civ.P. art. 966 to move for partial summary judgment for that relief. Thus, we reject the PCF's argument in that regard.
The PCF advances several other arguments in support of its assertion that the trial court erred in granting the motion for summary judgment. Specifically, the PCF contends that the trial court erred in granting the partial summary judgment because, although liability was statutorily admitted, the McPhersons were still required to prove a causal connection between the admitted liability and damages in excess of $100,000. The PCF contends that the McPhersons were required to prove by medical testimony that Mr. McPherson was disabled and also asserts that there exist genuine issues of material fact.
La.R.S. 40:1299.44(C)(5) provides:
At the hearing [on the petition seeking approval of the agreed settlement and/or demanding payment of damages from the PCF] the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care *975 provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits to one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
In Graham v. Willis-Knighton Medical Center, 97-0188, p. 15 (La.9/9/97); 699 So.2d 365, 372, the supreme court explained:
[T]he legislative intent of "liability" in Section 1299.44 C(5) was that the payment of $100,000 in settlement establishes proof of liability for the malpractice and for damages of at least $100,000 resulting from the malpractice, which is a very significant benefit to the medical malpractice victim. However, at the trial against the Fund, the plaintiff has the burden of proving that the admitted malpractice caused damages in excess of $100,000.
In so holding, Graham expressly rejected the pretrial procedure it had enunciated in Pendleton v. Barrett, 95-2066 (La.5/31/96); 675 So.2d 720. Under Pendleton, the trial court was required to distinguish between the original harm which the admission of liability encompassed and the secondary harm, and the claimant was relieved of the obligation to prove a causal connection between the admitted malpractice and the plaintiff's original and primary harm but was required to prove the causal connection between the malpractice and the secondary harm.
The PCF would have us interpret Graham as requiring the McPhersons to again prove that Dr. Lewis's actions constituted malpractice as an element of the required proof of damages. We do not interpret Graham as allowing a trial of the malpractice issue. The settlement between the McPhersons and Dr. Lewis relieved the McPhersons of the obligation of "proving (1) the standard of care and (2) a breach by the health care provider." Greer v. Lammico, 29,066, p. 8 (La.App. 2 Cir. 4/13/98); 712 So.2d 598, 602. The McPhersons need only prove that their causally connected damages exceeded $100,000.00 in value. Depending on the nature of the damages alleged, this burden of proof may or may not require expert medical testimony.
In this case, the settlement necessarily established that Mr. McPherson lost the sight in his left eye as a result of Dr. Lewis's substandard care. Absent any other contributing factors, common sense, and not further medical evidence, would dictate that he may have suffered a diminished earning capacity as a result of his loss of sight. The McPhersons attempted to establish the extent of this diminished earning capacity with the evidence submitted in support of their motion for summary judgment. We find that they failed in their attempt, not because they failed to establish a causal connection between the medical malpractice and the loss of earning capacity, but because there remain genuine issues of material fact concerning the value. Mr. Simmons clearly testifies that he is of the opinion Mr. McPherson did suffer some loss of earning capacity from the disability associated with his eye. However, he is also of the opinion that Mr. McPherson sustained a loss of earning capacity associated with the residual disability resulting from the back surgery which is unrelated to the malpractice action.
Additionally, Mr. Simmons's testimony is contradictory concerning the extent of loss of earning capacity in general. The *976 following exchange took place between Mr. Simmons and the McPhersons' counsel:
Q Your opinion was that [Mr. McPherson] can return to the labor market at positions ranging from minimum of $5.15 an hour to about $6.00 to $6.50 per hour?
A Yes.
Four questions later, Mr. Simmons stated, "I'm saying anywhere from $5.15 to $6.00 an hour loss of earning capacity per hour." Thus, the record is unclear whether Mr. Simmons's opinion is that Mr. McPherson can now earn only $5.15 to $6.50 per hour or whether his earning capacity has been reduced by $5.15 to $6.00 per hour. If the latter is the case, there is no evidence of the amount of Mr. McPherson's wages before the injury. Additionally, it is not at all clear whether the answers were in the context of disability from the back and eye conditions, or disability from only the eye condition. Such a distinction is particularly necessary where Mr. Simmons discussed not only Mr. McPherson's loss of eyesight, but also his back condition and the disability resulting therefrom.
We note that the McPhersons, citing page 42, lines 5-6 of Mr. Simmons's deposition, assert in their appellate brief:
It was uncontested that Mr. McPherson had been making over $20.00 per hour. Mr. Simmons testified that had Mr. McPherson not sustained the blind eye but only the bad back, he could have returned to work at jobs around $10.00 to $11.00 per hour. However, with the blind eye, he loses an additional $5.15 to $6.00 per hour.
We respectfully disagree with the McPhersons' interpretation of that testimony. The portion of the deposition testimony upon which the McPhersons rely was in the context of an answer to a question about the opinion of Stephanie Chalfin, apparently the McPhersons' vocational rehabilitation expert, whose findings were not introduced into evidence or attached to the motion for summary judgment:
Q Well, according to this if I understand this correctly, her estimation would be he has a loss of earning capacity anywhere between $4.00 an hour to about $14.00 or $15.00 an hour?
A Well, I think really, you know, with the job titles that she has used here, I think you need to take an average of all of those. I know one that she has listed pays as high as $19.00 an hour but that is the highest. So if you take an average, I think it would be probably around $10.00 to $11.00 an hour and I'm saying anywhere from $5.15 to $6.00 an hour loss of earning capacity per hour.
It is not at all clear whether the answer was in the context of disability from the back condition and eye condition or the disability from only the eye condition. Furthermore, we interpret Mr. Simmons response to be that Ms. Chalfin's figures should have been averaged and that the average of her figures was around $10.00 to $11.00 an hour, whereas his figures were from $5.15 to $6.00 an hour, not that he was of the opinion that Mr. McPherson could have returned to work at $10.00 to $11.00 an hour if he had sustained disability regarding only the back condition. We have found nothing in the deposition to indicate what portion of the $5.15 to $6.00 per hour loss-of-earning-capacity figure was attributable solely to the eye condition. Therefore, there exist genuine issues of material fact regarding the value of the loss of earning capacity.

DISPOSITION
For the foregoing reasons, we reverse the summary judgment in favor of the McPhersons on the issue of loss of earning capacity and assess costs of this appeal to them. We remand this case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COOKS, J., dissents and assigns written reasons.
*977 COOKS, J. dissenting.
The majority's decision creates a procedural nightmare that is unwarranted. The defense expert's testimony supports the trial court's partial summary judgment in plaintiffs' favor. The expert's testimony establishes if Mr. McPherson had sustained only the prior back injury, he would have been capable of earning wages ranging from $10-12 per hour. Because he is now legally blind in one eye as a direct consequence of defendants' negligence, he is only able to earn $5.15 to $6.50 per hour, which sum when deducted from the back injury figure results in loss wages totaling $5.15 to 6.00 per hour. The expert's testimony, when read as a whole, is neither confusing nor inconsistent.
Although the plaintiffs' counsel admitted during oral argument he inadvertently neglected to introduce the expert's written report or illicit from him detailed information regarding McPherson's wage record or earning capacity predating his back injury, this failure does not require that we reverse the lower court's judgment and remand the case for a second jury trial on this issue.. As the majority notes a jury trial was held on all the remaining issues and a verdict was rendered in plaintiffs' favor for general damages and medical expenses. At the very least, this appeal should have been consolidated with the pending appeal of the jury's verdict and the loss wages issue should have been remanded to the district court for the limited purpose of allowing the parties opportunity to submit additional evidence and to supplement the record on appeal. This Court, thus, would retain authority to review the issue de nova; and, thereby, avoid judicial inefficiency in this instance.
NOTES
[1] The McPhersons initially named Lake Area Medical Center as one of the defendants. However, Galen-Med, Inc., responded to the petition, and it is not disputed that Galen-Med, Inc., and not Lake Area Medical Center, is the appropriate party defendant.
[2] The McPhersons dismissed their claims against all defendants except Dr. Lewis and Galen-Med, Inc.
[3] The McPhersons assert in their appellate brief that the correct calculation is $207,812.00 rather than $207,842.00.
[4] The parties assert that following the summary judgment, a jury trial was held on the remaining issues in the case, resulting in a verdict in favor of the McPhersons in the sum of $322,979.00 for general damages and medical expenses. We note that the PCF has appealed that judgment, which is not currently before us in this appeal.
[5] La.Code Civ.P. art. 969 prohibits summary judgments in actions for divorce or annulment of marriage or in any case where the community, paraphernal, or dotal rights may be involved in an action between husband and wife, with the exception that summary judgment may be granted in an action for divorce under specified conditions.
[6] We note that Acts 1997, No. 483, § 1, effective July 1, 1997, substituted in La.Code Civ.P. art. 966(E) "rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case" for "rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."