705 So.2d 753 (1997)
Archie B. McCRERY, Jr., et al, Plaintiffs-Appellants,
v.
WILLIS KNIGHTON MEDICAL CENTER, et al., Defendants-Appellees.
No. 29999-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1997.
*754 Charles R. Rowe, Bossier City, for Plaintiff-Appellant Archie B. McCrery, Jr.
Nelson, Hammons & White by John L. Hammons, Shreveport, for Plaintiff-Appellee Elizabeth McCrery.
Cook, Yancey, King & Galloway by Lisa Dunn Folsom, Shreveport, for Defendant-Appellee Patients' Compensation Fund.
Before MARVIN, C.J., BROWN, J., and PRICE, J. Pro Tem.
MARVIN, Chief Judge.
In this medical malpractice action, Archie B. McCrery, decedent's widower appeals, urging us to increase the trial court's wrongful death award of $50,000 and the award of $60,000 in general damages for decedent's loss of a 20-percent chance of surviving a pulmonary embolism. To reach these respective awards the trial court multiplied its assessment of damages in each instance by the 20-percent chance of survival.
We affirm the judgment for these reasons:

Preface
To reach the awards of which appellant complains, the trial court followed the percentage methodology adopted by this court in Smith v. State, Dept. of Health and Hospitals, 26,280 (La.App. 2 Cir. 12/9/94), 647 So.2d 653 thereafter Smith, App.. During the pendency of this appeal the supreme court, reversing Smith, App. and disapproving of its methodology, adopted a methodology that allows the percentage of the lost chance to be considered in determining, but not to "mechanistically" control, the award. Smith v. State, Dept. of Health and Hospitals, 95-0038 (La. 6/25/96), 676 So.2d 543 [hereafter Smith, La.].
*755 Plaintiff McCrery contends the trial court should have determined that his wife's chance of survival was greater than 50 percent and, alternatively, that, in accord with the supreme court methodology in Smith, La., the trial court's respective awards for the survival action claim and the wrongful death claim should not have been reduced by any multiple. This contention ignores Smith, App. and Smith, La.
Contending that the awards are generous and should be affirmed, the appellee, Patients Compensation Fund (PCF), argues that the Smith, La. methodology does not apply to this appeal because Smith, La. was rendered after the trial court rendered its judgment, following Smith, App. The law is contrary to PCF's argument. Smith, La., the judicial ruling in effect at the time this opinion is rendered, applies in this appeal, although rendered after the trial court's judgment. See McNamara v. Bayou State Oil Corp., 589 So.2d 1099, 1108 (La.App. 2 Cir.1991); Clarke v. Tandy Corp., 559 So.2d 508, 509 (La.App. 2 Cir.1990).
In this appeal we simply review the record to determine whether the awards, which we now consider as lump sum awards in the light of Smith, La., are just and fair awards, not abusively high or low.

Facts
Mrs. McCrery's family doctor, Dr. John Leopard, treated her for several days for symptoms including dry cough, low grade temperature, fatigue and shortness of breath before he referred her to internal medicine specialist, Dr. John Reeves, April 18, 1990. On that day, Mr. McCrery telephoned Dr. Leopard when Mrs. McCrery's condition worsened. After Dr. Reeves agreed to accept the referral, Dr. Leopard directed Mrs. McCrery to the Willis Knighton South Medical Center emergency room for evaluation and admission to Dr. Reeves's service. Mr. McCrery took her there, arriving about 12:15 p.m.
An ER doctor, Dr. Crook, examined Mrs. McCrery, ordered diagnostic tests, and reported to Dr. Reeves, who gave verbal orders to admit her to the hospital with a diagnosis of bronchopneumonia. Mrs. McCrery was taken to a hospital room about 2:30 p.m. The nurse assigned to Mrs. McCrery called Dr. Reeves's office several times during the afternoon to confirm Dr. Reeves's awareness of Mrs. McCrery's admission and to report concern about Mrs. McCrery's condition and report Mrs. McCrery's vital signs and test results. During the next three or so hours, Dr. Reeves ordered tests and treatment for Mrs. McCrery by telephone but did not go to the hospital to examine Mrs. McCrery or review the hospital records or test results.
The nurse telephoned Dr. Reeves at 6:15 p.m., telling him Mrs. McCrery was cyanotic, indicating inadequate oxygen. Dr. Reeves asked the nurse to review results of all tests. Learning from the nurse that a cardiac enzyme test showed abnormal results which indicated a cardiac and pulmonary problem, Dr. Reeves ordered Mrs. McCrery transferred to ICU before going to the hospital to see her.
Dr. Reeves arrived at the hospital at 7:20 p.m. as Mrs. McCrery was being moved to ICU. He was concerned that she was having a heart attack and had called cardiologist Dr. Anil Chhabra for an emergency consult for Mrs. McCrery. Mrs. McCrery went into cardiac arrest at 8:05 p.m. just as Dr. Chhabra arrived. He and Dr. Reeves managed to briefly resuscitate Mrs. McCrery before pronouncing her death at 8:45 p.m.
The autopsy showed the cause of death to be "saddle emboli" completely obstructing both main pulmonary arteries. The pulmonary emboli noted in the autopsy were layered, indicating they had grown over a period of time, at least hours and perhaps days.
Dr. Reeves and others were made defendants in this action. Dr. Reeves's private insurer compromised the claims against it and other health care providers were dismissed. The matter went to trial against the Patient Compensation Fund (PCF) and Dr. Reeves as a bench trial.
The trial court found that Dr. Reeves's failure to attend to Mrs. McCrery and examine her in person violated the standard of care required of him as a physician and deprived her of a chance of survival, determining *756 that she had a 20 percent chance of survival but for Dr. Reeves's malpractice.
The trial court found $300,000 to be the proper amount for the survival action of Mrs. McCrery, reducing that amount by the 20 percent multiple to $60,000. The court similarly reduced Mr. McCrery's award for wrongful death [$250,000] to $50,000. The judgment awarded $17,142.86 for the survival action and $14,285.72 for Mr. McCrery's wrongful death action, after the court granted the defendants credit for amounts paid Mr. McCrery pursuant to the settlement with Dr. Reeves's insurer.

CAUSATION
The experts agreed that a pulmonary embolus is difficult to diagnose and is more often missed than accurately diagnosed. Experts also agree the appropriate treatment was blood thinning medication called heparin, which inhibits further growth of the clot, but does not dissolve it. The body's blood thinning mechanism could dissolve the clot over a period of time, but the likelihood of successfully avoiding blockage of the pulmonary arteries by administration of heparin is not ascertainable from the testimony in this record. Dr. Chhabra "could not say" if beginning treatment with heparin several hours prior to Mrs. McCrery's cardiac arrest would have increased her chances of survival, but agreed that heparin might have helped her survive.
Additionally, Dr. Chhabra, Dr. Crook and Dr. Harrell, an ER doctor, acknowledged that "clotbusting" drugs available in 1990 may have assisted in dissolving Mrs. McCrery's bloodclot had her condition been timely diagnosed. Such medications were relatively new in 1990 and no information was available at trial to estimate the percentage of successful treatment of pulmonary emboli with those drugs at that time.
No statistics on survival rates for patients such as Mrs. McCrery in 1990 were available. The medical testimony strongly suggests that survival was possible, but not probable. The coroner could not give the age of the clot which caused the death but opined it may have been days old. The most common treatment in 1990, administration of heparin, would prevent the clot from enlarging. The experts knew of no studies or information to statistically establish or estimate the potential effectiveness of the "clotbusting" drugs on a clot similar to Mrs. McCrery's.
The record allows the conclusion that treatment was available which would have afforded Mrs. McCrery some chance of survival if timely administered. The record, however, negates Mr. McCrery's contention that Mrs. McCrery had a better than 50 percent chance of survival with proper and timely attention by Dr. Reeves. To the contrary, the experts agreed that diagnosis of the condition is difficult due to the similarity of the symptoms with other diseases, and that pulmonary emboli very often result in death even under the most ideal circumstances of prompt diagnosis and treatment.
The medical evidence as to likelihood of successful treatment of the pulmonary emboli also supports the conclusion that Mrs. McCrery may not have survived even without Dr. Reeves's professional shortcomings. No one could say that Mrs. McCrery would more likely than not have survived but for Dr. Reeves's malpractice. A finding that Mrs. McCrery had a better than 50 percent chance of survival cannot reasonably be made on this record.
The trial court's holding that the chance of survival lost by Mrs. McCrery as a result of Dr. Reeves's failure to attend her was 20 percent, rather than 50 percent or greater, cannot be found clearly wrong.

DAMAGES
Smith, La., requires a fact finder to "focus on the chance of survival lost on account of malpractice as a distinct compensable injury and to value the lost chance as a lump sum award based on all the evidence in the record, as is done for any other item of general damages." Smith, La., supra, at p. 547. The court reasoned:
[T]he loss of a less-than-even chance of survival is a distinct injury compensable as general damages which cannot be calculated with mathematical certainty.... [T]he factfinder should make an objective determination of the value of that loss, fixing *757 the amount of money that would adequately compensate the claimants for that particular cognizable loss. * * *.
* * * [A fact finder] can calculate the lost chance of survival without going through the illusory exercise of setting a value for the wrongful death or survival claims and then mechanically reducing that amount by some consensus of the expert estimates of the percentage chance of survival. * * *.
The calculation of damages for the loss of a chance of survival is not like the calculation of comparative fault damages..... [I]n the loss of a chance of survival context, the award of damages for this particular loss is the "bottom line" figure. Any theoretical figure representing the amount the claimants would have been awarded if they had been successful in proving the defendant's fault more probably than not caused the loss of the tort victim's life is not a concrete figure that can properly be subjected to a reduction because of plaintiffs' failure of proof. * * *.
...[The fact finder should] render a verdict in the lump sum amount of damages attributable only to the lost chance of survival. * * *.
* * *. [The fact finder] will be allowed to consider ... evidence of percentages of chance of survival along with evidence such as loss of support and loss of love and affection, and any other evidence bearing on the value of the lost chance.
 Smith, La., supra, [at] p. 549.
The amount of damages awarded by the trial court may not be amended by a reviewing court unless the award is found to constitute an abuse of discretion. Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976). Reviewing the trial court's award of damages to Mr. McCrery for the loss of Mrs. McCrery's 20 percent chance of survival as a compensable injury distinct from the loss of life in a wrongful death claim, we find no abuse of discretion by the trial court in the amounts awarded.
A monetary award, of course, is proper in the survival action for the pain and suffering of Mrs. McCrery during her hospitalization from 12:15 p.m. to 8:45 p.m. on April 18, 1990 as a result of Dr. Reeves's malpractice. Much of the suffering of Mrs. McCrery during this time would have been experienced regardless of Dr. Reeves' professional shortcomings, according to this record. Some, but not the major part, of Mrs. McCrery's suffering may be attributed to Dr. Reeves's malpractice. For that damage, we find that a lump sum award of $60,000 is just and fair.
Had the trial court ignored the mechanistic methodology of Smith, App., and awarded a lump sum of $60,000 in the survival action, we would have affirmed that award. Of course, that award is subject to the credit for amounts earlier paid to Mr. McCrery.
The trial court award to Mr. McCrery of $50,000 in damages was erroneously characterized as an award for wrongful death instead of for the lost chance of survival. As directed by Smith, La., we focus on Mrs. McCrery's loss of a 20 percent chance of survival as a distinct compensable injury for which a lump sum award should be made. We value the lost chance based on all the evidence in the record, including our agreement with the trial court's reasoning that the lost chance was less than 50 percent, or about 20 percent. For that award, we deem $50,000 is just and fair.
Again, had the trial court ignored the methodology in Smith, App. and awarded a lump sum of $50,000 for the lost 20 percent chance of survival, we would have affirmed that award.
We shall amend the judgment to correctly state that the $50,000 award in favor of Mr. McCrery is made for Mrs. McCrery's lost chance of survival, subject to credit for amounts earlier received by Mr. McCrery.

DECREE
For the foregoing reasons, the judgment in favor of Mr. McCrery for the wrongful death of decedent is amended to render judgment in his favor for the decedent's lost chance of survival. In all other respects the judgment, *758 as amended, and at appellant's cost, is affirmed.