726 So.2d 1042 (1999)
Larry CLARK, et al., Plaintiffs-Appellants,
v.
CITY OF SHREVEPORT, et al., Defendants-Appellees.
Nos. 31,407-CA, 31,649-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1999.
Davis Law Office, LLC by S.P. Davis, Sr., Shreveport, for Appellants.
Pettiette, Armand, Dunkelman, Woodley & Byrd, LLP by Edwin H. Byrd, III, Shreveport, for Appellees.
Before HIGHTOWER, WILLIAMS and GASKINS, JJ.
HIGHTOWER, Judge.
Plaintiffs, Larry Clark and Gloria Myles ("the Clarks"), appeal the sustention of summary judgment motions dismissing their claims against the City of Shreveport and two paramedics who allegedly failed to treat timely the couple's fatally wounded daughter. We affirm.

Facts and Procedural History
On the afternoon of May 6, 1997, two teenagers, Quana Myles and her cousin, Joyce Collins, encountered an older woman, Mary Appacrombie, as they walked past her home in Shreveport. Appacrombie accused the two girls of talking about her and, after producing a .45 caliber semi-automatic pistol, shot Quana in the head. The bullet entered the rear of the skull and exited through the forehead. An emergency medical service unit quickly arrived at the scene but determined not to transport the victim to the hospital. Plaintiffs, parents of the now-deceased girl, claim she lay face down on the ground for some fifty minutes without receiving *1043 medical attention. During that time, Quana exhibited involuntary reflex movements (described as twitching), as well as agonal type respirations. Eventually, a second EMS unit, dispatched to the scene, transported the fifteen-year-old girl to LSU Medical Center where, unfortunately, she died approximately ten hours later.
About three and one-half months later, asserting that the actions and inactions of the paramedics contributed to the death of their child, plaintiffs filed a wrongful death and survival action, as well as a "lost chance of survival" claim. The named defendants, the City of Shreveport and two of its emergency medical technicians, eventually moved for summary judgment, arguing that plaintiffs would be unable to show that any negligence on their part contributed to Quana's death or caused her to lose a chance of survival.[1] In granting each of these summary judgments, the trial court stated:
[T]he record presented establishes that the actions or inactions of the employees, agents and representatives of the City of Shreveport did not cause or contribute to the death of the victim, that the actions and inactions did not deprive the victim of a chance of survival, and that all of the expert medical testimony clearly establishes that the gunshot wound sustained by the victim was a fatal wound regardless of the actions or inactions of the employees, agents and representatives of the City of Shreveport.
Plaintiffs now appeal the dismissal of their claims against the City and the two fire department paramedics.

Discussion
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Moreover, through a 1997 amendment to Article 966, the jurisprudential presumption against granting summary judgment has been eliminated. See Acts 1997, No. 483. Instead, the enacted changes have leveled the playing field for the litigants. Documentation submitted by the parties will now be scrutinized equally and the earlier overriding presumption in favor of trial on the merits has been removed. Koeppen v. Raz, 29,880 (La.App.2d Cir.10/29/97), 702 So.2d 337; Gardner v. LSU-MC, 29,946 (La. App.2d Cir.10/29/97), 702 So.2d 53. Indeed, summary judgment is now favored to secure the just, speedy, and inexpensive determinations of all except certain disallowed actions. La. C.C.P. art. 966A(2).
Under the current summary judgment approach, if the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. And, as consistently noted in La. C.C.P. art. 967, the opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence which will establish that material facts are still at issue. Koeppen, supra; Gardner, supra. An appellate court reviews summary judgment de novo, under the same criteria that govern a trial court's considerations regarding the appropriateness of summary judgment. Id.
In the present matters, both the survival and wrongful death actions are premised upon the proposition that the negligence of the tortfeasors caused the death of *1044 the victim. Cf. La. C.C. arts. 2315.1, 2315.2. Against a medical malpractice defendant, the "lost chance of survival" concept has permitted recovery of damages resulting from a medical provider's failure to alter the course of a pre-existing condition by providing adequate care or treatment. See, e.g., Smith v. State, DHH, 95-0038 (La.06/25/96), 676 So.2d 543; Hastings v. Baton Rouge General Hospital, 498 So.2d 713 (La.1986). And, while recognizing that there may be more than one cause-in-fact of a death, a plaintiff claiming that the deceased lost a chance of survival must establish that the defendant's negligence substantially contributed to the patient's demise, i.e., lessened the chance of survival. Hastings, supra; Rowsey v. Jones, 26,823 (La.App.2d Cir.05/10/95), 655 So.2d 560. Said differently, there must be a causal connection between the death and the alleged acts of professional negligence, and the plaintiff must prove that the deceased had a chance of survival, prior to the complained-of act, which was then lost as a result of that negligence. Smith, supra; Rowsey, supra. Defendants contend that the Clarks cannot establish the essential causation element of their wrongful death, survival, and lost chance of survival claims. We agree.
Every medical expert whose report or deposition appears of record agrees that the gunshot wound sustained by Quana was, in and of itself, a fatal injury. She immediately lost consciousness and retained only minimal electrical activity in the brain. According to Dr. Thomas Flynn, the neurologist, the victim would have had no evidence of conscious brain function after being shot. Prior to any actions or inactions by the EMS technicians, indeed, prior to their summons and arrival, Quana had no chance of survival.
While the experts agree that immediate transportation to the hospital might have secured for the patient a few hours or days of continuing life, the best outcome would nevertheless, as the doctors explained, have been a short-lived vegetative state supported by a ventilator. Thus, any assumed negligence on the part of the defendants in their failure to transport or treat the victim any earlier did not lessen her chance of survival or cause her death. Simply stated, there is no dispute that the young girl would have perished as a result of the lethal gunshot wound.

Conclusion
The remote to unlikely possibility (as characterized by the experts) that Quana Myles would live in a very unresponsive coma for an undetermined, but brief, period of time is not the sort of "survival" anticipated by our jurisprudence. Thus, based on this record, the actions or inactions of defendant did not bring about the harm of which plaintiffs complain, viz., the death of the victim or the loss of a chance of survival. Accordingly, the judgments of the district court are affirmed at plaintiffs' costs.
AFFIRMED.
NOTES
[1] The City of Shreveport moved for summary judgment on March 19, 1998; the court granted that motion on April 7, 1998. The EMS technicians, not named as defendants until April 6, filed their summary judgment motion on April 8. They initially utilized the same proof as offered by the City in support of their earlier, successful motion. Plaintiffs, however, countered the second summary judgment effort with additional evidence. This piecemeal procedural process raises interesting questions regarding what may appropriately be considered in reviewing the two separate summary judgments. Finding an affirmance proper under both sets of evidence, however, we do not reach that issue.