741 So.2d 182 (1999)
Clarence Steen STROUD, Randy Stroud and Jason Matthew Stroud, Plaintiffs,
v.
Bruce GOLSON, M.D., Defendant.
No. 32,044-CA.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1999.
*183 Joseph W. Thomas, New Orleans, Counsel for Appellees.
Donald J. Anzelmo, Monroe, Counsel for Appellant La. Patient's Comp. Fund
Before NORRIS, C.J., and BROWN and GASKINS, JJ.
BROWN, J.
In this medical malpractice action for the failure to diagnose lung cancer, defendant, the Louisiana Patients' Compensation Fund ("PCF"), appeals a $1.5 million jury verdict which was reduced by the trial court's judgment to $400,000 to comply with the PCF's maximum exposure under Louisiana's medical malpractice scheme. We affirm.

FACTS
On March 29, 1994, Gloria Stroud was examined by Lauren J. Mikey, M.D. After viewing x-rays, Dr. Mikey told Mrs. Stroud that she may have lung cancer and referred her to Thomas J. Gullatt, M.D. On March 30, 1994, Dr. Gullatt examined Mrs. Stroud and referred her to St. Francis Medical Center in Monroe for a CT scan. That same day, a CT scan was performed and its findings interpreted by Bruce Golson, M.D. Dr. Golson opined *184 that, according to the CT scan, Mrs. Stroud did not have lung cancer.
Approximately one year later, on April 10, 1995, Mrs. Stroud was hospitalized at St. Francis for a cerebral hemorrhage caused by an unrelated condition known as arteriovenous malformation ("AVM").[1] During this treatment, x-rays and CT scans revealed inoperative cancer in Mrs. Stroud's left lung.
On May 31, 1995, Mrs. Stroud was discharged from St. Francis. On August 15, 1995, Mrs. Stroud died as a result of the cancer. She was survived by her husband of 33 years, Clarence Stroud, and her two major sons, Jason and Randy Stroud.
Plaintiffs, decedent's husband and sons, filed the instant suit seeking damages arising from Dr. Golson's failure to properly interpret Mrs. Stroud's CT scan. Before trial, plaintiffs settled with Dr. Golson and his insurer, St. Paul Fire and Marine Insurance Company, for $80,000, while reserving their rights to seek excess damages from the PCF.[2]
On February 23, 1998, a trial by jury was commenced against the PCF which admitted medical negligence but claimed that Mrs. Stroud would have died from the fast-acting cancer even if it had been diagnosed in 1994. On February 25, 1998, the jury returned a verdict finding that Mrs. Stroud lost a less than even chance of survival because of Dr. Golson's negligence and awarded plaintiffs $1.5 million in damages. On March 18, 1998, the trial court entered judgment in favor of plaintiffs consistent with the statutory cap, reducing the award to $400,000, together with legal interest and costs.
Thereafter, the PCF filed JNOV and new trial motions, both of which were denied. The PCF now appeals, citing three assignments of error. Plaintiffs have answered the appeal.[3]

DISCUSSION

DamagesLost Chance of Survival
The PCF first argues that the jury abused its discretion in awarding plaintiffs $1.5 million in damages for their decedent's lost chance of survival.
In Smith v. State, 95-0038 (La.06/25/96), 676 So.2d 543, the supreme court recognized the right to recover damages for any lost chance of survival and set forth the method of valuation. (Emphasis added). In Smith, supra, x-rays showed a fast-acting cancer. The patient was released without being told of the findings. When the patient returned the next year, it was too late. The hospital admitted negligence but argued that the patient would have died anyway.
In Smith, supra, the supreme court held that when the chance of survival is less than 50%, the factfinder is "to focus on the chance of survival lost on account of malpractice as a distinct compensable injury and to value the lost chance as a lump sum award based on all the evidence in the record, as is done for any other item of general damages." Id. at 547. The loss of less than an even chance of survival was found to be a distinct compensable injury to be distinguished from the loss of life in wrongful death cases which include scenarios in which the chances of survival are 50 % or greater.
*185 Damages awarded by a jury are to be reviewed in the light most favorable to the prevailing party. O'Riley v. City of Shreveport, 30,107 (La.App.2d Cir.01/23/98), 706 So.2d 213. The discretion vested in the trier of fact is great, such that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Reasonable persons frequently disagree about the measure of general damages; therefore, it is only when the award is beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id.
In the present case, the jury awarded the plaintiffs a lump sum of $1.5 million for Mrs. Stroud's lost chance of survival. This award was reduced by the trial court to $400,000 because of the medical malpractice cap and Dr. Golson's responsibility for the first $100,000. After reviewing the award of damages in the light most favorable to the plaintiffs, we find no abuse of discretion.
Plaintiffs' expert, Dayton Stanley Misfeldt, M.D., testified that approximately 25% of patients diagnosed with cancer confined to the lung area, as was Mrs. Stroud's in 1994, are "cured" of disease, noting that the disease was within the most favorable stage for recovery at this time.[4] Dr. Misfeldt further explained that when the disease spreads to the mediastinum, as was Mrs. Stroud's case in 1995, only approximately 5% recover.[5] Dr. Misfeldt pointed out that the disease was within the least favorable stage for recovery at that time in 1995, causing Mrs. Stroud to lose a 20% chance of survival due to Dr. Golson's malpractice.
According to the testimony of Mr. Stroud and the two sons, Mrs. Stroud maintained a close relationship with all three. Mrs. Stroud certainly suffered a great deal of mental anguish from the hopeless condition with which she was faced and the knowledge that earlier detection was lost because her CT scan was not properly read. Her decision to not undergo the painful and debilitating chemotherapy in 1995, when the odds were so stacked against her recovery, was certainly justified. It is also a reasonable conclusion that Mrs. Stroud would have, in all likelihood, opted for the treatment had the cancer been properly diagnosed in 1994.
Based upon the evidence adduced at trial and the trial court's reduction of the jury's $1.5 million verdict to $400,000 so as to comply with the applicable statutory cap, we find no abuse of discretion. This assignment of error has no merit.

Denial of Motions for JNOV and New Trial
The PCF next argues that the trial court erred in denying their JNOV/new trial motions, claiming the jury's award of $1.5 million was abusive based upon their misunderstanding of the applicable law. As we have found the jury's verdict to be reasonable and the resulting judgment of $400,000 appropriate, this assignment is without merit.

Hearsay Objection
Defendant lastly argues that the trial judge erred when he overruled the hearsay objection regarding Mr. Stroud's testimony concerning what Mrs. Stroud's reasons were for declining treatment after her cancer was diagnosed. The testimony at issue is as follows:
Mr. Thomas: Now, did your wife discuss YouYou and your wife discuss whether or not she should have treatment for her cancer?

*186 Mr. Stroud: Yes, we did.
Mr. Thomas: And were you a part in making a decision with her with why she did not agree to have treatment?
Mr. Stroud: Yes.
Mr. Thomas: Share with the jury what she said about that?
Mr. Stroud: She, ah, 
Mr. Anzelmo: Your Honor, I object to hearsay.
The Court: I understand. But, I think itIt is hearsay but it's reliable. I'll allow it.
Mr. Thomas: Go ahead.
Mr. Stroud: Ah, I had aMy sister passed away in November '94 with lung cancer, and she found out in July of '94 that she had lung cancer. So, she went and took the radium treatments and she weighed a hundred and twenty-five pounds and was eating and doing all right until she started taking the radium treatments, and by the end of the radium treatments she could hardly get about, and actually she just laid down and starved herself to death. She weighed sixty-five pounds when she passed away, and was bed ridden all that time. And the wife felt that it was too far gone in her for any treatments to do any good, plus what few days she had left she didn't want to be like my sister.
The PCF argues that Mr. Stroud's testimony did not fit any of the hearsay exceptions and the court's statement that the evidence was "reliable" compounded error citing Cole Oil and Tire Company, Inc. v. Davis, 567 So.2d 122 (La.App. 2d Cir.1990).
Mr. Stroud's testimony regarding statements his wife made were statements of her then-existing state of mind. La.C.E. art. 803(3). The testimony showed the motive behind Mrs. Stroud's decision not to receive treatment, namely, her belief that the treatments would not be effective, as well as her desire to avoid the severe pain and discomfort which can accompany chemotherapy. This assignment of error is without merit.

DECREE
For the reasons expressed above, the trial court's judgment is AFFIRMED. Costs are assessed against defendant-appellant, the PCF.
NOTES
[1] AVM is a life-threatening condition that can cause a person's brain to hemorrhage, resulting in "significant morbidity and mortality."
[2] According to La. R.S. 40:1299.42, Dr. Golson and his personal liability insurer were only liable for the first $100,000 in damages. The PCF was liable for the remaining damages up to a $500,000 cap.
[3] Plaintiffs requested in their answer that the judgment be amended so as to award plaintiffs $250,000 each for the wrongful death of Mrs. Stroud, in addition to the $500,000 lost chance of survival damages. Because plaintiffs did not brief this issue, we will not address it. We note, however, that no expert gave Mrs. Stoud an even chance at survival.
[4] Dr. Misfeldt explained the terms "cured" and "five year cure" to mean that if the cancer doesn't recur within five years of treatment, it usually won't recur for the rest of a person's lifetime.
[5] The mediastinum is the mid-area between the two lungs where the heart and the vessels that come to and from the heart are located.