779 So.2d 894 (2000)
Larry W. GREER, et al., Plaintiffs-Appellants,
v.
LAMMICO, et al., Defendants-Appellees.
No. 34,058-CA.
Court of Appeal of Louisiana, Second Circuit.
December 22, 2000.
Rehearing Denied January 18, 2001.
Writ Denied April 27, 2001.
*896 Sentell Law Firm, L.L.C., By C. Sherburne Sentell, Jr., Minden, Counsel for Appellants.
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, By Lawrence W. Pettiette, Jr., Joseph S. Woodley, Shreveport, Counsel for Appellee.
Before NORRIS, C.J., and GASKINS and DREW, JJ.
GASKINS, J.
The plaintiffs, Larry W. Greer, Frances Boudreaux, David Greer and Rachel Freeman, are the family of the decedent, Gretchen Greer. They appeal a civil jury verdict finding that they are not entitled to damages in excess of the $100,000.00 malpractice settlement paid by a physician following the death of Mrs. Greer as a result of breast cancer. The defendant, Louisiana Patient Compensation Fund (PCF), answered the appeal, objecting to the jury award. For the following reasons we affirm the trial court judgment.

FACTS
This matter is before this court for review for the third time. The facts are stated in the previous opinions as follows:
Mrs. Greer noticed a mass in her left breast and consulted Dr. [Robert] Barrett for treatment. After an examination and biopsy, the tumor was diagnosed as malignant. On July 23, 1990, Dr. Barrett performed a modified mastectomy of the left breast and determined that all the cancerous tissue had been removed. Extensive tests indicated that the cancer had not spread. Dr. Barrett then informed Mrs. Greer that the cancer was localized and that she had a 75% chance of the cancer not recurring. Mrs. Greer continued to see Dr. Barrett post-operatively. Other than examining Mrs. Greer's right breast for a palpable mass, Dr. Barrett never performed a mammogram on Mrs. *897 Greer's right breast despite Mrs. Greer's repeated requests for a mammogram.
On December 26, 1990, Mrs. Greer, during a consultation with Dr. Christopher McDonald, on referral from Dr. Barrett, mentioned that a mammogram of her right breast had not been performed. The mammogram that was immediately scheduled and performed on December 26, 1990, revealed a tumor in Mrs. Greer's right breast. When the biopsy indicated that the tumor was malignant, Mrs. Greer underwent a right modified mastectomy on January 2, 1991. At that time, Mrs. Greer was informed by Dr. Barrett that her chance of survival was less than 50% and that she would need both chemotherapy and radiation treatment.
When the tumor in her left breast was discovered, extensive testing was performed to determine whether the cancer had metastasized. All tests were negative and showed that the cancer had not spread to her lymphatic system. However, following the second surgery, tests revealed that cancer had spread to Mrs. Greer's lymph nodes which reduced her chance of surviving the cancer.
Subsequent to the mastectomy of her left breast, Mrs. Greer had approximately six treatments of chemotherapy administered by Dr. McDonald. After discovery of cancer in her right breast, Mrs. Greer was treated more aggressively with chemotherapy, radiation therapy, and hormone therapy, which made her very ill and caused great suffering. Within a short period of time, doctors acknowledged that the cancer was incurable. Mrs. Greer died on January 22, 1995.
Greer v. Lammico, 29,066 (La.App.2d Cir.1/31/97), 688 So.2d 692, writ granted, judgment vacated, 97-0731 (La.11/7/97), 703 So.2d 30 (Greer I); Greer v. LAMMICO, 29,066 (La.App.2d Cir.4/13/98), 712 So.2d 598 (Greer II).

PROCEDURAL HISTORY
The plaintiffs contend that after Mrs. Greer asked Dr. Barrett whether a mammogram should be done on the right breast, Dr. Barrett failed to order it. The test was finally performed by order of Dr. McDonald about 5½ months after the cancer in the left breast was found. After discovery of the cancer in the right breast, and the determination that the cancer had spread to Mrs. Greer's bones and was incurable, she took legal action against Dr. Barrett. The procedural history is also outlined in the prior opinions:
Gretchen Greer, who suffered breast cancer, filed a claim against Dr. Barrett requesting the Patients' Compensation Fund ("PCF") to form a medical review panel. The petition for medical review panel alleged that Mrs. Greer's "chances for survival have been significantly reduced as a result of the medical negligence of defendant (Dr. Barrett) in failing to institute appropriate diagnostic procedures in a timely fashion" to determine whether Mrs. Greer had cancer in her right breast also. Further, the petition alleged that Dr. Barrett's act of malpractice "materially reduced plaintiff's (Mrs. Greer's) chances of recovering from the cancer and has likewise materially worsened the chances that the adjunctive therapy will be effective and has likewise resulted in the necessity for substantially more aggressive adjunctive therapy." Dr. Barrett settled without the matter proceeding to the medical review panel for a decision. His insurer paid the policy limits of $100,000.00 and obtained a full release. Mrs. Greer reserved all rights against PCF for damages exceeding $100,000.00. Mrs. Greer then filed a petition seeking judicial approval of the settlement with Dr. Barrett, who admitted malpractice, and asking the court to set a hearing to determine the amount of damages, if any, to be paid Mrs. Greer by the PCF. That petition alleged that Mrs. Greer was entitled to an award of $500,000.00 *898 plus all past and future medical expenses and legal interest on all amounts from the date of the original filing of the claim.
Before a jury trial on the issue of excess damages could be held, Mrs. Greer died. Her husband and children were substituted as plaintiffs, and the petition was amended to add claims for wrongful death, mental anguish, pain and suffering, loss of quality of life, lost chance of survival, and other additional damages. The supplemental and amended petition filed after Mrs. Greer's death alleged her death and the extent of the harm caused by the act of malpractice prior to her death, including a "lost chance of survival" and "shortened life expectancy."
The jury rendered a verdict finding that Dr. Barrett's malpractice was not a substantial factor which reduced Mrs. Greer's chance of survival and awarding no damages. The judge denied the Greer's motions for judgment notwithstanding the verdict and new trial.
The plaintiffs appealed that decision. On January 31, 1997, in Greer I, this court rendered a decision, based on La. R.S. 40:1299.44 C(5)[1] as interpreted in Pendleton v. Barrett, 95-2066 (La.5/31/96), 675 So.2d 720, and Graham v. Willis-Knighton Medical Center, 27,338 (La.App. 2nd Cir.9/29/95), 662 So.2d 161. Under those cases, admission of liability by payment of the $100,000.00 limit for a malpractice claim relieved the plaintiff of the burden of proving a causal connection between the malpractice and the harm. This court ruled that the trial court committed reversible error under the Medical Malpractice Act in allowing the PCF to relitigate the issue of causation. We also found that Mrs. Greer's chance of survival was reduced by one-third and awarded $400,000.00 for her lost chance of survival, with a $100,000.00 credit for the amount of the settlement with Dr. Barrett.
Subsequently, the Louisiana Supreme Court amended the judgment of this court in the Graham case, abandoned its holding in Pendleton, and attempted to clarify the effect of La. R.S. 40:1299.44 C(5) by defining the term "liability" as used in that provision. See Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365. In Graham, the supreme court held that payment of a $100,000.00 malpractice settlement established proof of liability and damages to that amount, but in a trial against the PCF, the plaintiff has to prove that the malpractice caused damages in excess of $100,000.00. Greer I was remanded to this court for reconsideration in light of the Louisiana Supreme Court's decision in Graham.
This court's decision on remand is Greer II. Under the supreme court's new pronouncement in Graham, supra, this court found that the Greers had to prove that Dr. Barrett's admitted breach of the standard of care caused damages in excess of $100,000.00, the amount paid in settlement. We also considered whether the jury instructions properly and adequately reflected *899 the applicable law regarding the plaintiffs' burden of proof at trial. This court found that the trial court failed to properly instruct the jury as to the burden of proof under the statute and the verdict was tainted by the instruction. Therefore, we reversed the trial court judgment and remanded for a new trial.

PRESENT CASE
The jury trial on remand was held in August 1999. The plaintiffs primarily asserted a claim for loss of chance of survival. The PCF contended that the delay of 5½ months between the discovery of cancer in Mrs. Greer's left breast and the mammogram and discovery of cancer in the right breast was a breach of the standard of care, as admitted by Dr. Barrett. However, according to the PCF, the only damage caused by the breach was mental anguish in not having the mammogram performed earlier. The PCF asserts that Mrs. Greer had incurable cancer in the right breast before she ever consulted Dr. Barrett and his actions did not diminish her chances of survival. According to the PCF, the $100,000.00 settlement adequately compensated her.
The Greers alleged that Dr. Barrett's malpractice did cause a lost chance of survival and caused damages for pain and suffering, mental anguish, and loss of consortium that exceed the $100,000.00 settlement. Prior to trial, the plaintiffs filed a motion in limine which sought to preclude the testimony of the PCF's expert witnesses, Dr. Christopher McDonald, Dr. Alan Grosbach, Dr. Richard Mansour, Dr. Charles Joseph Paine, and Dr. Steven Hightower. The plaintiffs objected that these experts improperly testified that Mrs. Greer suffered no harm by the delay in obtaining the right breast mammogram. The plaintiffs argued that this testimony was precluded because at least $100,000.00 in harm was admitted by the malpractice settlement. The plaintiffs also sought to prevent the PCF from raising the issue of victim fault and to prevent the defendant's experts from testifying as to when Mrs. Greer's cancer metastasized. The motion was not ruled on prior to trial, but was referred to the merits.
At trial, the PCF was allowed to present the experts listed above, who testified that Mrs. Greer's right breast cancer was incurable before she ever consulted with Dr. Barrett and therefore, no loss of chance of survival was caused by the delay in performing the right breast mammogram.
The jury returned a verdict finding that the plaintiffs' damages did not exceed $100,000.00. The jury awarded Gretchen Greer $77,485.58 in medical expenses, $5,000.00 in pain and suffering, mental anguish and loss of enjoyment of life and $5,000.00 for lost chance of survival. Her husband, Larry Greer, was awarded $12,514.42 for loss of consortium. No award for loss of consortium was made for Mrs. Greer's three children. These awards total $100,000.00. After subtracting the amount paid by Dr. Barrett, there was no balance due. Therefore, the PCF owed nothing to the Greers.
On September 30, 1999, the trial court signed a judgment acknowledging that the jury did not find damages in excess of $100,000.00 and dismissing the plaintiff's claims against the PCF. Costs were assessed to the plaintiffs. The plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV), complaining of abusively low damage awards for loss of chance of survival, pain and suffering to Mrs. Greer and loss of consortium to Mr. Greer. They also objected to the jury's failure to make any loss of consortium award to the Greer children. The motion was denied by the trial court. The plaintiffs appealed, asserting numerous assignments of error. The PCF answered the appeal.

LOST CHANCE OF SURVIVAL
The issues in loss of chance of survival cases are whether the tort victim lost any chance of survival because of the decedent's negligence and the value of that *900 loss. Smith v. State, Department of Health and Hospitals, 95-0038 (La.6/25/96), 676 So.2d 543. The plaintiff need not show that the decedent would have survived had she received the appropriate treatment; rather the plaintiff need only show that the decedent had a chance of survival which was denied as a result of the defendant's negligence. Gordon v. Willis-Knighton Medical Center, 27,044 (La.App.2d Cir.6/21/95), 661 So.2d 991, writs denied, 95-2776 (La.1/26/96), 666 So.2d 679, 95-2783 (La.1/26/96), 666 So.2d 679. Clark v. City of Shreveport, 31,407 (La.App.2d Cir.1/20/99), 726 So.2d 1042, writ denied, 99-0502 (La.4/1/99), 742 So.2d 872.
The $100,000.00 malpractice settlement serves as a stipulation that there was liability and that damages were, at least, $100,000.00. The plaintiff then has the burden at trial of proving that the damages were in excess of that amount. Graham, supra. Although the PCF originally argued that the admission of liability could be interpreted as applying only to mental anguish for the untimely mammogram, the jury clearly found there was a lost chance of survival and this finding has not been appealed by the PCF.
An appellate court may not set aside a jury's findings of fact in the absence of manifest error or unless it is clearly wrong. Where there is conflict in testimony, reasonable inferences of fact should not be disturbed on review. When the jury's findings of fact are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Rosell v. ESCO, 549 So.2d 840 (La.1989). In this case, not only is the jury's finding on this issue not manifestly erroneous, it is also uncontested and is affirmed.

DAMAGES
Both the plaintiffs and the defendant raise numerous arguments on appeal concerning the damage awards in this case. The plaintiffs contend that the jury verdict is inconsistent in awarding over $77,000.00 in medical expenses and then awarding only $5,000.00 in pain and suffering and $5,000 for lost chance of survival. They also claim that the awards for these elements of damages and the award to Mr. Greer for loss of consortium are abusively low. They further contend that the trial court erred in failing to award loss of consortium to the decedent's adult children. The defendant argues that the jury erred in making awards for pain and suffering and loss of consortium.
The Graham court provided us with an outline for determining damages in a lost chance of survival:
When the chance of survival ... is less than fifty percent, the court may not award full damages for the loss of life.... Smith v. State, Dept. of Health and Hosp., 95-0038 (La.6/25/96), 676 So.2d 543 (1996). Rather, the factfinder, judge or jury, focuses on the chance of survival ... that has been lost because of the malpractice and "value[s] the lost chance as a lump sum award based on all the evidence in the record, as [is] done for any other item of general damages." 95-0038 at 7, 676 So.2d at 547. The "loss of a less-than-even chance of survival [or chance of saving a limb] is a distinct injury compensable as general damages which cannot be calculated with mathematical certainty, ... [and] the factfinder should make a subjective determination of the value of that loss, fixing the amount of money that would adequately compensate the claimants for that particular cognizable loss." 95-0038 at 9, 676 So.2d at 548. "The jury's verdict of a lump sum amount of damages can be tested on appeal for support in the record by reviewing the percentage chances and the losses incurred by the tort victim and his or her heirs, and any other relevant evidence, thus providing assurance against speculative verdicts." 95-0038 at 11, 676 So.2d at 549.
*901 The Louisiana Supreme Court in Graham, supra, and Smith, supra, demand that we consider the percentage chances and losses incurred by Mrs. Greer and her family, but caution that the award cannot be calculated with mathematical certainty. See also Lovelace v. Giddens, 31,493 (La. App.2d Cir.2/24/99), 740 So.2d 652, writ denied, 99-2660 (La.11/24/99), 750 So.2d 987. The Smith decision also makes it clear that the considerations of loss of support, loss of love and affection, and any other evidence bearing on the value of lost chance of survival factor to the determination of the award.
Our sole query on the lost chance of survival award is to determine if the jury's verdict was manifestly in error when it found that the plaintiffs failed to prove that Dr. Barrett's admitted breach of the standard of care caused damages in excess of $100,000.00. The defendant's experts claim that the cancer in the left breast, the cancer that was discovered first, was an aggressive cancer that would not readily respond to hormone treatment. Although no lymph nodes on this side were malignant, the defense experts opined that the metastasized cancer most likely originated from this cancer. The right breast, which was operated on last, contained a slow-growing cancer that was estrogen-receptive. This cancer, according to the defendant's experts, may have responded to the therapy administered after the first diagnosis. Dr. Cohen, the plaintiffs' expert, acknowledged that the right breast tumor pre-dated the first operation, and stated that it was likely that there was node involvement at that time. He suggests, however, that there is a chance that anywhere from zero to three nodes could have been cancerous at the time of the first operation and that had the right breast been removed five months earlier, Mrs. Greer might not have had metastasized cancer. Dr. Cohen summarized that the five-month delay in Dr. Barrett's ordering the mammogram increased Mrs. Greer's chance of relapse by 15 percent. The testimony placed before the jury, therefore, was that this delay caused a range of zero percent to a 15 percent lost chance of survival. The jury chose to award $100,000.00 for the lost chance of survival claim, the amount already paid in settlement funds.[2] This amount is clearly within the range that the jury could award for a zero to 15 percent lost chance of survival. Because we determine that the total award is not manifestly wrong, we need not determine if the specific awards comprising this total are inconsistent.[3]

NO HARM
The plaintiffs have urged numerous assignments of error asserting that the trial court erred in allowing the PCF's expert witnesses to testify that Dr. Barrett's malpractice caused no harm. They claim this is inconsistent where the doctor admitted harm by paying the malpractice settlement. The plaintiffs object that the PCF presented the testimony of four oncologists that they claim all testified that Dr. Barrett's malpractice caused no harm because the decedent's cancer had metastasized and was incurable even before the cancer in the left breast was detected.
Our review of these assignments is tempered by the difficult posture of the case. The supreme court has dictated that, after the payment of a malpractice settlement, in order to recover against the *902 PCF, the plaintiff must show that the malpractice caused more than $100,000.00 in damages. Further, in this case, the plaintiffs argue that the primary harm was loss of a chance of survival. The PCF is in the position of trying to show that the malpractice did not cause a loss of chance of survival and did not damage the plaintiff in excess of $100,000.00. The PCF attempted to show that the delay in obtaining a mammogram on the right breast had no effect on Mrs. Greer's chance of survival.
At trial, the plaintiffs objected to the testimony of Dr. Mansour and requested that the court instruct the jury that the witness' statement that there was no lost chance of survival was inconsistent with the admission of liability in the malpractice settlement. The plaintiffs made similar objections to the testimony of Dr. Hightower, Dr. Paine, Dr. Grosbach and Dr. McDonald. The trial court was correct in allowing the testimony and in refusing the instruction as to Dr. Mansour. The fact that the delay in obtaining a right breast mammogram was a breach of the standard of care, resulting in at least $100,000.00 in damages, is admitted by the payment of the malpractice settlement. The issue at trial was whether the delay in obtaining the mammogram decreased the decedent's chance of survival. Under the theory advanced by the plaintiffs, disallowing the testimony would deprive the PCF of any defense to the plaintiffs' claims for loss of chance of survival and for payment of damages in excess of $100,000.00. This result appears to be contrary to Graham, supra, by again relieving the plaintiffs of the burden of showing that the admitted malpractice caused harm in excess of $100,000.00. Further, the testimony elicited from the physicians was not to the effect that no harm whatever resulted from the failure to timely schedule a right breast mammogram. The testimony merely supported the PCF's position that the delay did not decrease Mrs. Greer's chance of survival.
The trial court did not err in allowing the PCF to present its defense to the plaintiffs' claims.

VICTIM FAULT
In a similar vein, the plaintiffs object to testimony elicited at trial regarding victim fault and mitigation of damages. They argue that this testimony was not properly admitted and that the PCF did not properly plead this affirmative defense. Dr. McDonald testified that at one point he offered the decedent a right breast mammogram and she declined. Dr. McDonald also testified that the decedent eventually stopped taking Tamoxifen, at that time an experimental drug used in the treatment of breast cancer. We find that testimony regarding victim fault was harmless.
In McCrory v. Jefferson Parish Hospital Service District No. 2, 96-624 (La.App. 5th Cir.12/30/96), 686 So.2d 1060, the court stated:
The PCF may not negate the admission of liability by the health care provider. Any attempt to "mitigate" damages by introducing a defense waived by the health care provider's settlement would abrogate the statutorily-imposed admission of liability and, thus, cannot be maintained. Accordingly, the trier of fact is not allowed to consider apportionment of fault in determining the amount of damages payable by the PCF.
We note that McCrory was decided before the supreme court's opinion in Graham v. Willis-Knighton Medical Center, supra. In spite of the supreme court's pronouncement in Graham that after a malpractice settlement, a plaintiff must prove that the malpractice caused damage over $100,000.00, it does not appear that the PCF would now be allowed to argue victim fault or mitigation of damages which entail a consideration and determination of liability and percentages of fault. However, in this case, because the evidence on this point was minimal and because the jury in fact found that Mrs. Greer did suffer a loss of chance of survival and was entitled to damages, we find that any error that may have occurred in the admission of this testimony was harmless. Our holding on this issue is strictly limited to the facts of this case.

*903 PRIOR TRANSCRIPT
The Greers assert that the trial court erred in allowing the PCF to use a transcript of testimony given in the first trial by one of Mrs. Greer's treating oncologists, Dr. Christopher McDonald. The plaintiffs claim that under La. C.E. 804B(1)[4], expert testimony from another proceeding is not admissible. The Greers contend that there was not a sufficient showing that Dr. McDonald was unavailable. Further, they contend that allowing this testimony defeated the purpose of remanding the case for retrial.
At trial, the PCF established that Dr. McDonald had moved out of state and was not available to appear in the present trial. We find no error in the determination that this witness was unavailable. As quoted above, former testimony of an unavailable expert witness is not admissible as an exception to the hearsay rule under La. C.E. art. 804B(1). However, in this case, the trial court astutely observed that Dr. McDonald, even though qualified as an expert witness, was also one of the decedent's treating physicians. Therefore, the trial court found that his testimony was not excludable under La. C.E. art. 804B(1). In the previous trial, the parties had an opportunity and similar motive to develop the testimony by direct, redirect and cross-examination. Therefore, as a treating physician, Dr. McDonald's prior trial testimony was admissible. However, under the most strict application of La. C.E. art. 804 B(1), any expert opinions or inferences made by Dr. McDonald would arguably be excludable. In this case, the testimony was edited to exclude large portions found to be objectionable to the plaintiffs. Any opinions or inferences that remained merely reiterated opinions stated by other experts who testified at trial. Thus, no prejudice occurred and any error that may have resulted does not warrant reversal. See Southern Message Service Inc. v. Commercial Union Insurance Company, 26,311 (La.App.2d Cir.12/7/94), 647 So.2d 398, writ denied, 95-0059 (La.3/10/95), 650 So.2d 1180.

DAUBERT OBJECTION
The Greers argue that the trial court erred in overruling their objection to the introduction of expert testimony regarding how far Mrs. Greer's cancer had spread. According to the plaintiffs, it was established at trial that four factors are necessary in order to make this determination. They claim that the tumor had to be examined under a microscope, the size had to be determined, as well as whether it was an invasive type and whether it had dead cells around it. The plaintiffs contend that, because the tumor in the right breast was not seen and examined during the several months between the first and second surgeries, none of these four factors were known. Therefore, they claim that it was impossible to retroactively stage the cancer years later to determine when it metastasized. According to the plaintiffs, the PCF did not comply with the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and State v. Foret, 628 So.2d 1116 (La.1993), in laying a foundation for the introduction of testimony regarding when the cancer became incurable. The plaintiffs contend that testimony as to how far the cancer in the right breast had progressed was based on unfounded speculation. This argument is without merit.
*904 The admissibility of scientific and technical evidence is regulated by La. C.E. art. 702 which provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
This article is based upon a similar provision in the Federal Rules of Evidence, F.R.E. 702. In Daubert v. Merrell Dow Pharmaceuticals, Inc., supra, the United States Supreme Court set forth the means for determining the reliability of expert scientific testimony. The trial court is to act as a "gatekeeper" to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. The pronouncement of Daubert was adopted by the Louisiana Supreme Court in State v. Foret, supra, which stated:
The reliability of expert testimony is to be ensured by a requirement that there be "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." This connection is to be examined in light of "a preliminary assessment" by the trial court "of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue." The court went on to make some suggestions as to how a court could fulfill its gatekeeping role. These involve whether or not the technique had been subjected to peer review and/or publication, the "known or potential rate of error", the existence of "standards controlling the technique's operation", the technique's "refutability" or, more simply put, testability, and, finally, an incorporation of the Frye general acceptance in the scientific community as only a factor in the analysis. [Citations omitted.]
In this case, the plaintiffs have failed to show that the expert opinions as to when Mrs. Greer's cancer metastasized did not comply with the admissibility requirements of Daubert. The experts had extensive pathology reports and laboratory analyses of the tumor removed from the right breast upon which to base their opinions. The opinions were shown to be both relevant and reliable. In essence, the plaintiffs argue that because the tumor was not examined at the time of the first surgery, no determination could be made after its removal a few months later as to how long it had been in place or when it metastasized. This argument is simply not supported by the record. The trial court did not err in rejecting the plaintiffs' argument that this expert testimony and evidence were not admissible.

COSTS
In the judgment below, the trial court assessed costs to the plaintiffs and specified that any expert witness fees or other expenses upon which the parties are unable to mutually agree should be taxed as court costs, to be considered by the court pursuant to a rule to show cause filed by either party in accordance with La. C.C.P. art. 1920. The plaintiffs contend that the trial court erred in failing to assess all costs and expert witness fees to the PCF. The plaintiffs cite La. R.S. 13:5105(B)[5] for the proposition that where the PCF asks for a jury trial, it shall pay all costs. The plaintiffs also point out that the jury made an award in their favor, although it was only $100,000.00. This argument is without merit.
This precise issue was addressed by this court in Hunter v. Bossier Medical Center, 31,026 (La.App.2d Cir.9/25/98), 718 So.2d 636. In that case, we concluded that *905 the court should look to the defendant health care provider's classification as a state or non-state agency and not the status of the PCF when determining how court costs should be allocated to the litigant. Because Dr. Barrett is not a state agency, La. R.S. 13:5105(B) does not apply.
Regarding the assessment of costs, it is well established that the court may render judgment for costs, or any part thereof, against any party as it may consider equitable. La. C.C.P. art. 1920. The trial court has great discretion in determining and allocating court costs. In the present case, at the trial court level, the plaintiffs were unsuccessful in proving that Dr. Barrett's malpractice caused damages in excess of $100,000.00. Therefore, we see no abuse of the trial court's great discretion in assessing costs to the plaintiffs.

INTEREST
The plaintiffs seek clarification of whether the PCF is liable for judicial interest on the entire amount awarded or only on the amount in excess of $100,000.00. Because we affirm the trial court judgment and award no damages in excess of $100,000.00, consideration of this issue is not necessary.

JUDGMENT NOTWITHSTANDING THE VERDICT
The Greers argue that the trial court erred in failing to grant JNOV in their favor. In the lower court, they sought modification of the jury verdict, complaining that the damage awards for loss of chance of survival, pain and suffering and loss of consortium were too low. Because we find that the jury awards were not abusively low, the trial court did not err in failing to grant JNOV in favor of the Greers.

CONCLUSION
For the reasons stated above, we reject the claims of the plaintiffs and the Louisiana Patient Compensation Fund. We affirm the jury verdict and trial court judgment in all respects. Costs in this court are assessed one-half to the plaintiffs and one-half to the defendant, the Louisiana Patient Compensation Fund.
AFFIRMED.
NORRIS, C.J., concurs in part and dissents in part.
NORRIS, C.J., concurring in part and dissenting in part.
I respectfully concur in part and dissent in part. I agree that the plaintiffs proved, under the standards of Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365, that Mrs. Greer sustained a loss of chance of survival as a result of Dr. Barrett's conduct. However, this record (chiefly Dr. Barrett's own testimony) supports a finding that her lost chance was at least 33%. See, Greer v. Lammico, 29,066 (La.App. 2 Cir. 1/31/97), p. 8, 688 So.2d 692 at 696, vacated and remanded. As such, the lowest affirmable award would be $175,000. See, Corley v. State, 32,613 (La.App. 2 Cir.12/30/99), 749 So.2d 926; Stroud v. Golson, 32,044 (La. App. 2 Cir. 6/16/99), 741 So.2d 182, writ denied 99-2108 (La.10/29/99), 744 So.2d 1286; McCrery v. Willis Knighton Medical Center, 28,999 (La.App. 2 Cir. 12/10/97), 705 So.2d 753.
I would therefore affirm the finding of liability but amend the quantum to $175,000.
APPLICATION FOR REHEARING
Before NORRIS, C.J., WILLIAMS, GASINS, KOSTELKA, and DREW, JJ.
Rehearing Denied.
NORRIS, C.J., and WILLIAMS, J., would grant rehearing.
NOTES
[1] La. R.S. 40:1299.44C(5) provides:

(5) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
[2] See Lovelace v. Giddens, supra, where the court awarded $125,000.00 in damages for lost chance of survival for an 82-year-old woman whose x-ray was not read for 24 hours, delaying a diagnosis of bilateral pneumonia.
[3] While we note that consortium, pain and suffering, and other evidence is to be considered in determining the lost chance of survival award, we question whether these claims should be separately awarded by the jury. We pretermit this issue in this case, however, since the jury's verdict, which did not award in excess of the settlement amount, is not manifestly erroneous.
[4] La. C.E. art. 804B(1) provides:

B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given in another proceeding by an expert witness in the form of opinions or inferences, however, is not admissible under this exception.
[5] La. R.S. 13:5105(B), found in the Louisiana Governmental Claims Act, provides:

B. Whenever a jury trial is demanded by the state, state agency, or the plaintiff in a lawsuit against the state or state agency, the party demanding the jury trial shall pay all costs of the jury trial, including the posting of a bond or cash deposit for costs in accordance with Code of Civil Procedure Articles 1733 through 1734.1, inclusive.